

**IT IS ORDERED as set forth below:**

**Date: January 4, 2021**

_____

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 19-67128-pwb** |
| JAMES EDWARD McCONNELL, | ) | |
| Debtor. | ) | **Chapter 13** |
| | ) | |

### ORDER ON APPLICATION OF CHAPTER 7 TRUSTEE AND
### ATTORNEY FOR TRUSTEE FOR FINAL COMPENSATION
### AND REIMBURSEMENT OF EXPENSES

The Chapter 7 Trustee (the "Trustee") and his law firm filed an application (the "Application") for final compensation for services rendered and reimbursement of expenses incurred before conversion of this case to Chapter 13. [56]. The Trustee and his law firm request a total of $ 15,000: $ 13,304 for legal fees, $ 1,485.20 for the Trustee's fee, and $ 210.80 for expenses.[1] Unsecured claims are about $ 20,000 and will be paid in full no matter what happens.

_____

[1] The Application [56] states fees of $ 13,304 for the law firm's services and $ 1,915 for the Trustee's services, a total of $ 15,219, but requests total fees of $ 14,789.20 after a voluntary reduction in fees of $ 429.80. It does not specify whether the reduction is for fees of the trustee, the law firm, or both. In its earlier Order scheduling a hearing on the Application, the Court assumed that the voluntary reduction should be allocated to the Trustee's fee. Order and Notice of Hearing (Aug. 19, 2020) (the "August 19 Order"). [66] at 2. The Trustee has not requested a different allocation.

The Court conducted a hearing on the Application on October 1, 2020 (the "Hearing").[2] This Order constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, *applicable under* Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").   All references to statutory sections are to sections of the Bankruptcy Code, title 11 of the United States Code, unless the context indicates otherwise.

Part I provides an overview of a chapter 7 trustee's statutory duties under § 704(a), a trustee's employment of professionals to assist and represent the trustee in the performance of those duties, and the standards for allowance of compensation of a trustee and professionals. Part II states the facts.

Part III concludes that the Trustee's law firm is not entitled to any compensation.  In Sections III(A) and III(B), the Court denies compensation for services that were the performance

---

[2] No one objected to the Application.  The Court, however, has an independent duty to review applications of trustees and their attorneys for compensation under 11 U.S.C. § 330(a).

The Court's August 19 Order [66] stated the Court's concerns about allowance of the requested compensation and scheduled the Hearing to permit the Trustee and his law firm to address them.  No one submitted any written response to the August 19 Order prior to the Hearing.

At the Hearing, the Court heard presentations from the Trustee on behalf of himself and the law firm and from attorneys for the United States Trustee, the Debtor, and the Chapter 13 Trustee.  The duties of the United States Trustee include supervising chapter 7 trustees and reviewing applications for compensation. 28 U.S.C. § 586(a)(1), (3).  The Debtor will bear the burden of payment of allowed fees because, based on the value of nonexempt assets in this case, his Chapter 13 plan must provide for payment of all claims in full under § 1325(a)(4).  Creditors have no economic or other interest in the amount of the fees because they will be paid in full regardless of what happens.  See Section III(C).

In accordance with the August 19 Order and a Supplemental Order and Notice entered on August 28, 2020 [68], the Court, without objection, accepts the factual representations of counsel as evidence and will take judicial notice of the records in other cases in the Northern District of Georgia identified in those orders pursuant to Fed. R. Evid. 201.

The Court conducted the Hearing remotely due to the Covid-19 public health crisis. Attorneys for the Debtor, the Chapter 13 Trustee, and the United States Trustee participated by WebEx.  The Trustee elected to appear telephonically.

2

of the Trustee's statutory duties.  Section III(C) concludes that the law firm's services in opposing conversion to chapter 13 are not allowable because they were not necessary or beneficial to the estate.  Section III(D) disallows compensation for services in connection with the Trustee's retention of the law firm and its application for compensation.

Part IV concludes that the circumstances of this case do not justify compensation of the Trustee on a *quantum meruit* theory and that, therefore, the Trustee is entitled only to a statutory commission of $ 406 due under § 326(a) and § 330(a)(7) calculated on his disbursement of $ 1,624 to the Chapter 13 Trustee upon the conversion of the case.

The Trustee and his law firm are entitled to reimbursement of the requested expenses.

## I.  Trustee's § 704(a) Duties, Employment of Professionals, and Standards for Compensation of Trustee and Professionals

### A.  The Chapter 7 Trustee's Role and Duties

A chapter 7 bankruptcy case typically involves five principal parties:  (1) the debtor; (2) creditors; (3) the United States Trustee;  (4) the chapter 7 trustee, and, often, (5) professionals employed by the chapter 7 trustee.  The chapter 7 trustee plays a central role in the administration of the case.

Section 704(a) of the Bankruptcy Code sets forth the duties of the chapter 7 trustee. The chapter 7 trustee's duties are multi-fold, but the primary role is to "collect and reduce to money the property of the estate . . . and close such estate as expeditiously as is compatible with the best interests of parties in interest." § 704(a)(1).[3]  Another important duty is to investigate the financial affairs of the debtor and the existence of assets. § 704(a)(4).

---

[3] *See* U.S. Dept. of Justice, Executive Office for United States Trustees, HANDBOOK FOR CHAPTER 7 TRUSTEES at 4-1, (hereinafter the "*Chapter 7 Handbook*") available at https://www.justice.gov/ust/file/handbook_for_chapter_7_trustees.docx/download ("The principal duty of the trustee is to collect and liquidate the property of the estate and to distribute

The United States Trustee, appointed by the Attorney General of the United States, 28 U.S.C. § 581(a), has the statutory duty, among others,[4] to establish and maintain a panel of private trustees to serve in chapter 7 cases and to supervise them.  28 U.S.C. § 586(a)(1).  The Executive Office for United States Trustees maintains the *Handbook for Chapter 7 Trustees*[5] (hereinafter the "*Chapter 7 Handbook*") that states the views of the United States Trustee Program on the duties owed by a chapter 7 trustee to debtors, creditors, other parties in interest, and the United States Trustee.

Upon the filing of a chapter 7 case, the United States Trustee appoints an interim trustee from the panel of private trustees.  § 701(a)(1).  Unless creditors elect someone else at the meeting of creditors held pursuant to § 341(a) shortly after the filing of the case, § 702(b), the interim trustee becomes the trustee in the case.   § 702(d).  Creditors rarely elect a trustee, so the interim trustee becomes the trustee in almost all cases.

The Attorney General of the United States has prescribed the qualifications for membership on the panel of private trustees in 28 C.F.R. § 58.3(b),[6] as 28 U.S.C. § 586(d)(1)

---

the proceeds to creditors.").  The *Chapter 7 Handbook* also states that the trustee "shall not administer an estate or an asset in an estate where the proceeds of liquidation will primarily benefit the trustee or the professionals, or unduly delay the resolution of the case. The trustee must be guided by this fundamental principle when acting as trustee." *Id.*

[4] 28 U.S.C. § 586 states the duties of the United States Trustee.

[5] *Chapter 7 Handbook, supra* note 3.

[6]  28 C.F.R. § 58.3(b) provides that a panel trustee must:

(1) Possess integrity and good moral character.

(2) Be physically and mentally able to satisfactorily perform a trustee's duties.

(3) Be courteous and accessible to all parties with reasonable inquiries or comments about a case for which such individual is serving as private trustee.

(4) Be free of prejudices against any individual, entity, or group of individuals or entities which would interfere with unbiased performance of a trustee's duties.

(5) Not be related by affinity or consanguinity within the degree of first cousin to any employee of the Executive Office for United States Trustees of the Department of Justice, or to any employee of the office of the U.S. Trustee for the district in which he or she is applying.

requires.  The qualifications by statute cannot include a requirement that the trustee be a lawyer.

28 U.S.C. § 586(d)(1).

An individual, therefore, may serve as a trustee even if she is not a lawyer.  In the Northern

District of Georgia, the United States Trustee has selected a panel of 20 chapter 7 trustees; two

are accountants and the rest are lawyers.  All are highly qualified and experienced in chapter 7

bankruptcy practice.

The provisions for the selection of highly qualified persons as panel trustees contemplate that

the trustees be sophisticated, highly skilled, and thoroughly familiar with the operation of

bankruptcy law and procedures that regularly arise in routine chapter 7 cases.

The Court agrees with the following descriptions of the capabilities of chapter 7 panel

trustees.

---

(6)(i) Be a member in good standing of the bar of the highest court of a state or of the District
of Columbia; or

(ii) Be a certified public accountant; or

(iii) Hold a bachelor's degree from a full four-year course of study (or the equivalent) of an
accredited college or university (accredited as described in part II, section III of Handbook X118
promulgated by the U.S. Office of Personnel Management) with a major in a business-related
field of study or at least 20 semester-hours of business-related courses; or hold a master's or
doctoral degree in a business-related field of study from a college or university of the type
described above; or

(iv) Be a senior law student or candidate for a master's degree in business administration
recommended by the relevant law school or business school dean and working under the direct
supervision of:

(A) A member of a law school faculty; or

(B) A member of the panel of private trustees; or

(C) A member of a program established by the local bar association to provide clinical
experience to students; or

(v) Have equivalent experience as deemed acceptable by the U.S. Trustee.

(7) Be willing to provide reports as required by the U.S. Trustee.

(8) Have submitted an application under oath, in the form prescribed by the Director, to the
U.S. Trustee for the District in which appointment is sought: Provided, That this provision may
be waived by the U.S. Trustee on approval of the Director.

- "Having met [the high standards of 28 C.F.R. § 58.3(b)], the Trustee is presumed to possess the ability to perform the duties required of the position. . . . [A] trustee is appointed not devoid of any ability to function within the bankruptcy system.  To the contrary, the appointment is based on an ability to perform statutory and required functions within a legal system involving the interests of various stakeholders in a bankruptcy estate."[7]

-  "In order to be chosen as a panel trustee, a person must be sophisticated – at least in legal affairs or business matters.  A trustee therefore necessarily has a greater skill set than a layman in performing duties such as investigating a debtor's financial affairs or writing letters to collect debts."[8]

- "The trustee is simply and obviously not a lay person unschooled in the art and science of finding, capturing, and obtaining the value of an asset. . . ."[9]

- "As a general proposition, a trustee will be held to the standard of a sophisticated pro se litigant and will be expected to handle routine administrative matters without the need of counsel."[10]

## B.  The Trustee's Employment of Professionals

A chapter 7 trustee may employ professionals to represent or assist the trustee in the performance of statutory duties.  § 327(a).[11]  Such professionals specifically include, but are not

---

[7] *In re Peterson,* 566 B.R. 179, 189 (Bankr. M.D. Tenn.  2017) (citations omitted).
[8] *In re King,* 546 B.R. 682, 696-97 (Bankr. S.D. Tex. 2016).
[9] *In re Lowery,* 215 B.R. 140, 142 (Bankr. N.D. Ohio 1997).
[10] *In re Smith,* 2008 WL 2852263 at *8 (Bankr. D. Or. 2008).
[11] If a trustee employs a law firm, any partner or associate can perform work without further court order.  Bankruptcy Rule 2014(b).

limited to, attorneys, accountants, appraisers, or auctioneers. *Id.* A real estate broker is within the contemplation of § 327(a).

The *Chapter 7 Handbook* states, "The trustee must determine whether the services of a professional are needed and whether the cost is warranted. 11 U.S.C. §§ 330 and 704(a). Further, the trustee must determine *at the outset* the level of professional work required, and the estimated costs and benefits associated with the work." *Id.* at 4-19 (emphasis added).

As later text discusses,[12] a trustee's employment of a professional requires approval of the bankruptcy court on application of the trustee that contains information that Bankruptcy Rule 2014(a) requires and establishes that the professional meets the statutory qualifications of § 327(a). Judges in this District typically enter an order on an *ex parte* basis approving the application, subject to objection by any party within 21 days of entry of the order. Particularly in consumer cases, objections are rare, and they usually object to the necessity of the employment rather than the qualification of the professional.[13]

## C. Compensation of the Trustee and Professionals

### 1. *Compensation of the trustee*

A chapter 7 trustee's compensation is calculated based on a percentage of "all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims." § 326(a). The percentage differs based on the amount of money the trustee disburses. *Id*.

Although the chapter 7 trustee's compensation must also satisfy the requirement of § 330(a)(1)(A) that it be "reasonable" and for "actual, necessary services," § 330(a)(7) requires

---

[12] See Section III(B)(3).

[13] For example, a debtor or other party opposed to the sale of an asset may object to the employment of an auctioneer or real estate broker.

the bankruptcy court in making this determination to treat the trustee's compensation as a commission, based on § 326.  Accordingly, the trustee receives a statutory commission as presumptively reasonable compensation, in the absence of extraordinary circumstances.[14] Except in the unusual case, therefore, the time the trustee spends on a case is immaterial.

### 2. Compensation of the trustee's professionals

A professional's compensation depends on the type of services rendered, the customary method of compensation, and the value of the services to the estate. For example, a real estate broker would likely be paid a percentage fee from the sale of real property, an appraiser might receive a flat fee, and an accountant might bill at an hourly rate or provide services for a flat fee.

Likewise, the fee arrangements for attorneys employed by the trustee vary.  For example, if a trustee employs her law firm to prosecute actions under the avoidance provisions of the Bankruptcy Code (*e.g.,* §§ 544, 547, and 549) or other types of claims, the firm may do so based on an hourly rate.  Alternatively, if the trustee retains special counsel to prosecute a debtor's personal injury claim, the engagement in all likelihood would be on a contingent fee basis.

Regardless of the method of calculation, all professional compensation must satisfy the requirements of § 330(a)(1).

Section 330(a)(1) authorizes the Court to award "reasonable compensation for actual, necessary services" rendered by a trustee and his professionals.  Paragraphs (3), (4), and (6) of § 330(a) provide instructions for making that determination.

Section 330(a)(3) directs the court, in determining reasonable compensation, to consider "the nature, the extent, and the value of such services, taking into account all relevant factors,"

---

[14] *See, e.g., In re Wilson,* 796 F.3d 818, 820-21 (7th Cir. 2015); *In re Rowe,* 750 F.3d 392, 397-98 (4th Cir. 2014); *In re Lally,* 612 B.R. 246, 249-51 (Bankr. D. N.H. 2020) (collecting cases); *In re Martin,* Case No. 09-B-39093, Doc. No. 64, at 3 (Bankr. E. D. Ill. July 16, 2020).

including six specific considerations set forth in subparagraphs (A) through (F).  These non-inclusive factors are:  (1) time spent; (2) rates charged; (3) whether the services were necessary or beneficial at the time at which the services were rendered; (4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (5) whether the professional is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than bankruptcy cases.

Section 330(a)(4)(A) states what is effectively the converse of some of these listed factors.  Thus, it prohibits compensation for unnecessary duplication of services, for services that were not reasonably likely to benefit the debtor's estate, and for services that were not necessary to the administration of the estate.

Under § 330(a)(6), any compensation awarded for preparation of a fee application must be "based on the level and skill reasonably required to prepare the application."  The Supreme Court in *Baker Botts L.L.P. v. Asarco LLC*, 576 U.S. 121 (2015), held that attorney's fees incurred by an estate professional in defending a fee application are not allowable under § 330(a).

The usual beginning point for determination of attorney's fees under § 330(a)(1) is calculation of the so-called "lodestar" amount.  *E.g., Grant v. George Schumann Tire & Battery Co., (In re George Schumann Tire & Battery Co.)*, 908 F.2d 874 (11th Cir. 1990).  *See also Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988).

The lodestar amount is the attorney's reasonable hourly fee multiplied by the number of hours reasonably expended.  Determination of the lodestar requires consideration of the twelve

9

factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *E.g., Speights & Runyan v. Celotex Corp. (In re Celotex Corp.)*, 227 F.3d 1336, 1341 (11th Cir. 2000).

The *Johnson* factors are:  (1)  the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case;  (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

*3.  Compensation of trustee's own law firm*

The Bankruptcy Code provides that a trustee may act as her own attorney or accountant for the estate "if such authorization is in the best interest of the estate." § 327(d).

When the trustee employs the trustee's own law firm, § 328(b) limits its compensation to fees for the performance of "services as attorney . . . for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney . . . for the estate."

The purpose of this provision is the prevention of duplication of fees.  A trustee receives compensation for performance of the trustee's duties in the form of a commission based on disbursements in the case.  The commission does not depend on how much time a trustee spent. If a trustee as an attorney (or a trustee's law firm) receives compensation for services that are the

responsibility of the trustee, the result is that the estate pays legal fees for services for which the trustee is also receiving compensation.[15]

Accordingly, if a trustee's law firm provides services that are duties of the trustee, the law firm cannot be compensated for them.[16]  The shorthand expression for such noncompensable services that a law firm bills as legal services is "trustee work."

In distinguishing trustee work from legal work, it is useful to note that some of the trustee's statutory duties do not require any legal services at all while others clearly do.[17]  In a third category, which some courts have described as a "nebulous gray area," are services that are legal in nature but are "so closely related to the trustee's duties under § 704(a) that they arguably should not be compensated."[18]

In this "gray area," services that the trustee's law firm provides are compensable only in "unique circumstances" or where "unique difficulties" arise.[19]  The determination is necessarily a factual one that depends on the facts and circumstances of each case.  In the context of a chapter 7 case in which the trustee is a panel trustee, a court appropriately takes into account the skills

---

[15] *See, e.g., In re Peterson,* 566 B.R. 179, 191 (Bankr. M.D. Tenn. 2017); *In re King,* 546 B.R. 682, 693 (Bankr. S.D. Tex. 2016).

[16] *See, e.g., In re Peterson,* 566 B.R. 179, 190 (Bankr. M.D. Tenn. 2017) (collecting cases).

[17] *See, e.g., In re King,* 546 B.R. 682, 694-95 (Bankr. S.D. Tex. 2016).

[18] *Id.* at 195.

[19] *See, e.g., In re J.W. Knapp Company,* 930 F.2d 386, 388 (4th Cir. 1991) ("Only when unique difficulties arise may compensation be provided for services which coincide or overlap with the trustee's duties, and only to the extent of matters requiring legal expertise."); *In re King,* 546 B.R. 691, 697 (Bankr. S.D. Tex. 2016) ("[A trustee] can only obtain legal services chargeable to the estate where 'unique difficulties' arise and resolving such difficulties is beyond his skill set."); *In re Smith,* 2008 WL 2852263, at *8 (Bankr. D. Or. 2008) ("In unique circumstances when matters normally handled by the trustee involve complex legal issues, and the applicant has demonstrated the need for his involvement, courts have allowed compensation."); *In re Virissimo,* 354 B.R. 284, 293 (Bankr. D. Nev. 2006) ("There is no showing that either the records searches, the deed orders, the communications, or the review of the pending lawsuits presented unique difficulties that required the professional expertise of an attorney.").

and expertise of panel trustees. The trustee (or the trustee's law firm) has the burden of justifying the request for compensation for services in this "gray area" to establish that the services were outside the scope of the trustee's statutory duties and that performance of the duty required legal expertise.[20]

With these principles in mind, the Court states the facts in Part II.  Parts III and IV then consider compensation of the Trustee's law firm and the Trustee, respectively.

## II.  Facts

### A.  Events in the Chapter 7 Case Prior to Filing of Motion to Convert

The Debtor filed a chapter 7 case on October 28, 2019.  [1].

The Debtor's chapter 7 schedules reflected ownership of a residence valued at $ 117,692, [1] at 15, encumbered by security deeds in favor of Wells Fargo Home Mortgage for $ 73,634 and Discover Home Equity Loans for $ 31,657, and a homeowners' association claim of $ 275, a total of $ 105,566.[21] [1] at 23-24.   Based on these amounts, the Debtor claimed an exemption in

---

[20] *See, e.g., In re Peterson,* 566 B.R. 179, 191 (Bankr. M.D. Tenn. 2017) ("The responsibility lies with the attorney-trustee to address the Court's concerns and submit a fee application that clearly and succinctly sets forth the precise service performed in order for the Court to discern under what category the service falls:  trustee service or legal service."); *In re King,* 546 B.R. 691, 697 (Bankr. S.D. Tex. 2016) (citing cases).

[21]  Proofs of claim show slightly different amounts:  Wells Fargo, $ 65,555.41 (Claim No. 11); Discover Bank, $ 30,941.30 (Claim No. 14); and homeowners' association, $ 743.22 (Claim No. 12).  The total is $ 97,239.93, $ 8,326.07 less than the scheduled amounts.

the residence of $ 12,126. [1] at 2. The Debtor intended to retain his residence and reaffirm the debts to the two lenders and the homeowners' association. [1] at 38.

The Debtor's Schedules I and J showed net monthly income of $ 2,988 and net monthly expenses in the same amount. [1] at 34-37.

The Trustee prepared for and conducted the § 341(a) meeting of creditors on December 2, 2019.[22] That same day, the Trustee, as attorney, reviewed files and documents and drafted a legal work action memo,[23] and the Trustee's law firm researched tax records and state and county deed indexes for avoidable liens and transfers and properties that the Debtor did not disclose.[24]

Thereafter, the law firm reviewed the file and documents, prepared an application for approval of the Trustee's employment of the law firm, requested a full title examination for the residence, reviewed real estate documents and prepared and filed a notice of the estate's interest in the residence in the county real estate records pursuant to § 549(c).[25]

The Trustee requested the Clerk of the Bankruptcy Court to issue a claims bar date [17], which was established as March 4, 2020 [18], requested that the Internal Revenue Service send him the Debtor's 2019 tax refund, and asked a real estate broker to inspect and provide a comparative marketing analysis of the residence. The trustee also worked on reports.[26]

The Trustee reviewed the marketing information and determined that the value of the residence "would support a listing price" of $ 215,000 – some $ 100,000 more than the Debtor

---

[22] Time entry on Trustee's invoice, 12/2/19, [56] at 8.
[23] Time entry on law firm's invoice, 12/2/19, [56] at 11.
[24] Time entry on law firm's invoice, 12/2/19, [56] at 11.
[25] Time entries on law firm's invoice, 12/3/19 through 12/9/19, [56] at 11. Section III(A) explains the § 549(c) notice.
[26] Time entries on Trustee's invoice, 12/3/19, through 1/15/20, [56] at 8-9.

reported – and would result in a benefit of approximately $ 84,000 to the estate after deduction of

the Debtor's exemption of $ 12,126.  [26] at 2, ¶ 10.[27]  Based on scheduled unsecured debt of

$ 20,807, [1] at 31, the sale would produce a substantial surplus to be returned to the Debtor after

payment of  administrative expenses of the Trustee and his professionals.

In its Order entered on August 19, 2020, scheduling the Hearing [66] (the "August 19

Order"), the Court observed that the record in this case did not reveal the basis for the Debtor's

$ 117,692 valuation of the property, [66] at 4, and wondered how the Debtor came up with it.

[66] at 5, n. 5.  The Court noted that publicly available sources reflected values in the range of

$ 238,800 to $ 272,000.[28]

At the Hearing, the Trustee reported that the Debtor at the § 341(a) meeting testified that

he "didn't have a clue" as to the value of his residence.  Counsel for the Debtor stated that the

information came from an internet website that the law firm typically uses and has found

reliable.

---

[27] See Application to Employ Real Estate Broker, [56] at ¶¶ 7-10.  $ 84,408 is the sales price of
$ 215,000 less $ 130,592, the sum of a six percent broker's commission ($ 12,900), the total of
encumbrances as scheduled ($ 105,566), and the Debtor's exemption ($ 12,126).  As note 21
explains, the actual amount of the debts is about $ 8,300 less than the scheduled amounts, so the
net equity would be approximately $ 92,000.

[28] Fulton County's appraisals of real property for tax purposes are online.
https://iaspublicaccess.fultoncountyga.gov/datalets/datalet.aspx?mode=value_history&sIndex=1
&idx=1&LMparent=20.  These publicly available tax records showed an assessed value of
$238,800 for 2020.  The value for 2017 was $ 88,200, perhaps justifying a lower valuation than
$ 238,800.  August 19 Order, [66] at 5, n. 5.

Zillow showed an estimate of $258,904 with a range of $243,000 to
$273,000.  https://www.zillow.com/homes/1369-High-Point-Ave-SW--Atlanta,-GA-30315-
_rb/65462470_zpid/ (last visited August 17, 2020).  Bankruptcy lawyers and others often check
Zillow for an idea of value, although some courts do not admit valuations from internet sites
such as Zillow as evidence.  *See* W. Homer Drake, Jr., et al., 1 CHAPTER 13 PRACTICE &
PROCEDURE § 5:6 n. 42 (2020) (collecting cases).

Of course, internet or tax valuations, while useful, may not necessarily take into account
the condition of the property (whether through deterioration or improvements) which can affect
fair market value.

14

The Trustee at the Hearing stated that his practice when a debtor's residence has equity is to offer the Debtor an opportunity to pay the estate the value of the nonexempt equity to retain the residence.  The Trustee in other cases has made agreements with debtors for them to pay the estate the amount of the nonexempt equity in cash[29] or in installments over a period of 36 months.[30]

In this case, the Trustee, as attorney, on January 8, 2020, sent a letter to the Debtor's counsel with regard to payment to the estate of the nonexempt equity in the residence.[31]  The record does not indicate whether the Trustee demanded payment of the entire nonexempt equity that he determined a sale would produce, $ 84,000, or just enough to pay all the claims in the case and administrative expenses, or whether the Trustee proposed payments over time.

On the same day, the Trustee's law firm filed an application to retain a real estate broker to sell the Debtor's residence that the law firm prepared.  [26].

## B.  Events in the Chapter 7 Case After Filing of the Motion to Convert

Two weeks later, the Debtor filed a motion to convert his case to chapter 13.  [30].  The Debtor at that time did not file a plan and did not amend his Schedules I and J, which showed that he did not have any disposable income to be able to make payments under a plan.  Under Bankruptcy Rule 3015(b), the deadline for the filing of a plan is 14 days after conversion of the case.  The Bankruptcy Rules do not require amendments to the schedules upon conversion, but Bankruptcy Rule 1007(c)(6) requires a Chapter 13 debtor to file a statement of current monthly income for use in the Chapter 13 case on Official Form B122C-1.

---

[29] *In re Lynn,* Case No. 18-68121, Doc. No. 41 (Oct. 28, 2019); *In re Perrino,* Case No. 19-69106, Doc. No. 39 (Aug. 7, 2020).

[30] *In re Nailing,* Case No. 19-65912, Doc. No. 35 (Feb. 28, 2020).

[31] Time entries on law firm's invoice, 1/7/20 and 1/8/20, [56] at 12.  The entries describe the letter as an "Equity Settlement Demand" and as a "settlement/demand letter."

15

Based on the Debtor's statement of intent to retain his residence and reaffirm his mortgage debts, [1] at 38, it is logical to assume that the Debtor moved to convert to chapter 13 after the Trustee began the process of selling it in order to keep his home.

The nonexempt equity in the home of $ 84,000 is substantially more than the unsecured debt of approximately $ 21,000, so it is clear that the Debtor in his plan would have to pay his unsecured debt in full in order to meet the so-called "best interest of creditors" test of § 1325(a)(4).[32]  The Debtor is represented by competent counsel in this case, who surely must have told him this.  The Court finds that he must have known that his plan would have to provide for payment of all of his debts in full.

Shortly after filing the conversion motion, the Debtor reaffirmed his debts with the two mortgage lenders [34, 35] and with the creditor holding a security interest in his car.  [1 at 25, 29].  The Debtor was current on the mortgage debts.[33]  The Trustee abandoned the car.  [31].

On May 21, 2020, the Trustee received the Debtor's 2019 tax refund of $ 1,624. The Debtor's schedules had not disclosed his entitlement to any tax refunds, the returns for which were not yet due or filed at the time he filed this case.

## C.  The Trustee's Opposition to Conversion and Entry of Consent Order for Conversion

Debtor's counsel scheduled a hearing on the conversion motion for February 25, 2020, pursuant to the Court's self-calendaring procedures.  [30].

---

[32] Section 1325(a)(4) effectively requires payment in full of unsecured claims in a Chapter 13 case if they would be paid in full in a Chapter 7 case. *See generally* W. Homer Drake, Jr., et al., 1 CHAPTER 13 PRACTICE & PROCEDURE § 7:6 (2020).

[33] See Debtor's Chapter 13 Plan § 3.1, [47] at 10-11, (providing for "cure and maintenance" treatment for the claims of the residential lenders and the homeowners' association and stating that no arrearage exists for any of them).

On February 11, 2020, the Trustee's law firm filed an objection to conversion on behalf of the Trustee [38] that stated three grounds for denial of conversion:

1.   Chapter 13 is not feasible in view of the fact that the Debtor had no disposable income according to the budget in his schedules.  [38] at 4, ¶ 19.

2.   Conversion would not be in the "best interest of creditors."  [38] at 4-5, ¶ 20.   The Trustee contended that a conversion to chapter 13 would "prejudice creditors and cause further delay in the administration of the Bankruptcy Case."  [38] at 5, ¶ 22.

3.   The Debtor filed the motion to convert in bad faith.  [38] at 5, ¶ 21.  The basis for this contention is, "Based on Debtor's Value of only $ 117,692.00 when compared with Trustee's Value of $ 215,000, it appears that Debtor purposely undervalued the Property to hide the true equity therein, thereby evidencing bad faith."   *Id*.  The Trustee also asserted, "Debtor is not seeking a conversion of his Bankruptcy Case in a good faith effort to pay his creditors, but in an effort to not pay them in direct response to Trustee's interest shown in the Property."  [38] at 5, ¶ 23.

Counsel for the Debtor and the Trustee agreed to reschedule the hearing on conversion several times.  The lawyers communicated about settlement during this time.[34]  The Trustee at the Hearing stated that the parties decided to wait until the Chapter 7 bar date (March 4, 2020) to determine the amount of claims that would have to be paid in the Chapter 7 case, which would affect the amount that the Debtor would have to pay the estate to retain the residence.  The total of unsecured claims filed by the bar date is $ 19,799.64.[35]

---

[34] See time entries on law firm's invoice (all 2020), 2/12, 2/24, 2/27, 3/6, 4/1, 4/2, 4/14, 4/17, 4/20, 5/21, [56] at 12-14.

[35] Associated Credit Union filed two claims, one for $ 2,227.44 and one for $ 902.94.  Both are secured by the Debtor's car.  After conversion, the two residential lenders and the homeowners' association filed secured claims.

Counsel for the Debtor stated at the Hearing that she and the Trustee had attempted to work out a settlement but that the Debtor had concluded that he could not make the payments that would be required under the proposal the Trustee made in April.

On May 21, 2020, four days before the hearing on conversion scheduled for May 25, the Debtor filed amendments to his schedules and a chapter 13 plan. [46, 47].

The Debtor's amended schedules reflected an additional $ 500 per month of income in the form of rent from his roommate and a reduction of expenses of $ 400, resulting in the ability to pay $ 900 per month under a chapter 13 plan. [46] at 10-13.

The Debtor's plan proposed monthly payments of $ 900 and payment of 100 percent of unsecured claims.  The plan provided for full payment of the creditor fully secured by his vehicle.  Plan § 3.2, [47] at 4-5.  It stated that no arrearages existed on the three claims that encumber his residence and provided for the continuation of regular postpetition payments.  Plan § 3.1, [47] at 3-4.

The plan provides for the Trustee and his law firm to receive monthly payments beginning at $ 300 per month and increasing to $ 680 per month in May 2021.  It estimated the total amount of their claims to be $ 12,000. Plan § 5.3, [47] at 7.

After the Debtor amended his schedules and filed the plan, the Court entered an Order permitting conversion of the case, with the consent of the Debtor and the Trustee. [48].  The Consent Order, drafted by the Trustee's law firm,[36] states that, in accordance with § 706(a), the case will be reconverted, rather than dismissed, if the Debtor fails to obtain confirmation of a plan or to fully comply with all the terms of any confirmed plan or if any party in interest sought dismissal of the case.  [48] at 2.  The Consent Order permits the Trustee and his law firm to file

---

[36] Time entries on law firm's invoice, 5/21/20, [56] at 14.

an application for compensation and reimbursement of expenses and directs the Trustee to turn

over to the Chapter 13 Trustee the tax refund he received.[37]  *Id.*

## D.  The Application for Compensation

After conversion of the case, the Trustee filed the Application that seeks $ 1,485.20[38]  for

services he rendered as trustee and $ 13,304 for services his law firm provided as attorneys for

the trustee. The Trustee's law firm seeks reimbursement of expenses of $ 210.50, and the Trustee

requests reimbursement of an expense of 30 cents.  [56].  The total amount requested is $ 15,000.

Part III discusses compensation of the Trustee's law firm, and Part IV considers the

Trustee's fee.

### III.  Compensation of the Trustee's Law Firm

As Section I(C)(3) explains, a chapter 7 panel trustee's law firm is not entitled to

compensation for "trustee work" – those services that are the statutory duties of the trustee under

§ 704(a).  If the services are not trustee work, they must be necessary and beneficial, as § 330(a)

and the *Johnson* factors require.

The Court does not question whether the attorney and legal assistants took too much time

to perform the services they rendered.  Rather, the concern is the extent to which the services are

not compensable as "trustee work" and whether compensable legal work was necessary or

beneficial.

---

[37] The Order also provided for the reappointment of the Trustee as the chapter 7 trustee if
reconversion occurred.  The Court should not have entered this Order with this provision because
the United States Trustee, not the Court, appoints the chapter 7 trustee.  11 U.S.C. § 701(a).
[38] The Application states that the Trustee requests $ 1,915.  The lower amount in the text reflects
allocation of a voluntary adjustment of $ 429.80 to the Trustee's compensation, as note 1
explains.

The Court has categorized the itemized services the Trustee's law firm rendered into four categories. Appendix B shows the time and charges by attorney or legal assistant, as follows:

1. Trustee Duties. Services that appear to be trustee work – $ 1,679.50.

2. Sale of Real Estate. Services pertaining to the sale of the Debtor's residence that also appear to be trustee work – $ 1,320.00

3. Opposition to Conversion. Services pertaining to the Trustee's opposition to the Debtor's motion to convert – $ 6,802.50.

4. Attorney Retention and Compensation. Services pertaining to the retention and compensation of the law firm – $ 3,502.00.

## A. Trustee Duties

The law firm charged the estate $ 1,679.50 for 2.1 hours of the Trustee's time and 2.5 hours of legal assistants' time for services in this category between December 2 and December 9, 2019.

The Trustee, as attorney, reviewed files and documents and drafted a "legal work action memo re exemptions, turnover, etc."; reviewed the title examination report on the residence and "all documents"; and reviewed and revised the Trustee's notice of interest in real estate for filing pursuant to § 549(c).[39]

Legal assistants: reviewed the file; researched tax records and state and county deed indexes for avoidable liens and transfers and undisclosed properties; requested a title examination on the residence; reviewed the legal action work memo; reviewed real estate

---

[39] Time entries on law firm's invoice, 12/3/19, 12/9/19, [56] at 11.

documents; and prepared and filed the § 549(c) notice of the filing of the case in the real estate records to protect the estate's interest in the residence.[40]

One of the statutory duties of a chapter 7 trustee is "to investigate the financial affairs of the debtor." § 704(a)(4). As the *Chapter 7 Handbook*, at 4-26, explains:

> The trustee must investigate the debtor's financial affairs by reviewing the debtor's schedules of assets and liabilities, statement of financial affairs, and schedules of current income and expenditures which the debtor must file pursuant to section 521 and Fed. R. Bankr. P. 1007 and by examining the debtor at the meeting of creditors. The trustee must also conduct such other investigation as necessary, such as following up on credible tips about unscheduled assets.

A trustee's investigative duty includes basic review of files and documents, research of real estate records, a request for a title examination if warranted, and at least a preliminary review of any title examination and real estate documents. If the initial investigation reveals matters that require legal analysis, those services are compensable as attorney time.

Here, the Trustee and the law firm have not met their burden of establishing that their work involved legal analysis or that the work involved any unique difficulties. In the circumstances of this case, the Trustee's law firm is not entitled to fees for these services.[41]

The Trustee prepared a "legal work action memo" for which his law firm seeks compensation.[42] It is not clear what the "legal action memo" was. The time entry describes its

---

[40] Time entries on law firm's invoice, 12/2/19, 12/6/19, [56] at 11.

[41] *See, e.g., In re King*, 546 B.R. 682 (Bankr. S.D. Tex. 2016); *In re Lexington Hearth Lamp and Leisure, LLC*, 402 B.R. 135, 144 (Bankr. M.D.N.C. 2006); *In re Virissimo,* 354 B.R. 284, 293 (Bankr. D. Nev. 2006); *In re Finney*, 1997 WL 33475580 (Bankr. E.D. Va. 1997).

[42] Time entry on law firm's invoice, 12/3/19, [56] at 11.

subjects as "exemptions, turnover, etc.," but the record shows no legal issues with regard to these matters.  Nothing else identifies what legal issues the memo covered.

The Trustee prepared the "legal action work memo" one day after he conducted the § 341(a) meeting.  Perhaps it was a recordation of what the Trustee needed to do in the case, a statement of legal issues that the case presented, or a list of assignments of tasks to other attorneys and legal assistants.

At the outset of a case, a trustee's consideration of and planning for what the trustee needs to do in the case, what legal issues must or might need to be addressed, or assignments of work to others is trustee work that does not involve legal advice or representation.[43]  In the absence of a showing that the "legal action memo" addressed a material question that required legal advice, the Trustee's law firm cannot receive compensation for the Trustee's work on it as a lawyer.[44]

The Trustee and his law firm have not explained why the preparation and filing of the § 549(c) notice required legal services.  Under § 549(c), a trustee may not avoid an unauthorized postpetition transfer by a debtor of an interest in real property to a good faith purchaser under § 549(a) unless a copy or notice of the Debtor's bankruptcy petition was filed in the applicable real estate records before the transfer was perfected.

Recognizing the need to file a § 549(c) notice to protect the interests of an estate with real estate assets is part of the statutory duty of the trustee to liquidate the estate's assets.  Section

---

[43] The Trustee did not record any time for these matters on the Trustee's invoice. [56] at 8.

[44] *See, e.g., In re Virissimo,* 354 B.R. 284, 293 (Bankr. D. Nev. 2006).  The Court notes that Judge Massey permitted the Trustee's law firm to be compensated for a "legal work action memo" in *In re Hambrick,* 2012 WL 10739279 (Bankr. N.D. Ga. 2012).  *Hambrick* did not discuss the considerations stated in the text that cause the Court to conclude that preparation of the memo under the facts in this case is trustee work.

549(c) requires nothing more than the recordation of a copy or notice of the petition; it does not even require a legal description of the property.  Preparing and filing it appears to be a clerical function, and the record here does not show that doing so required any legal advice.

The Trustee's law firm is not entitled to compensation for any of the services in this category.  All of them, in the circumstances of this case and in the absence of a showing of the necessity for legal services, were trustee work.

## B. Sale of Residence

The Trustee's law firm charged $ 1,320.00 for four hours the Trustee (1.2 hours) and a legal assistant (2.8 hours) spent to employ a real estate broker and to send a "settlement/demand" letter to the Debtor's attorney.

In two hours, the legal assistant prepared and obtained the execution of the broker's verified statement for the application, reviewed and revised the listing agreement, and prepared a draft of the application to employ the broker and a proposed order granting it.  The legal assistant took .8 hours to draft the letter to the Debtor's lawyer.[45]

The Trustee spent .8 hours to review and revise the broker retention application, statement, and listing agreement, including the special stipulations.  Redrafting the letter to the Debtor's counsel took .4 hours.[46]

A chapter 7 trustee has the duty to "collect and reduce to money the property of the estate."  § 704(a)(1). The question is whether the Trustee and his law firm have established that these services in the circumstances of this case are not trustee work such that they are compensable as legal services.

---

[45] Time entries on law firm's invoice, 1/7/20, 1/7/20, [56] at 11-12.
[46] Time entry on law firm's invoice, 1/8/20, [56] at 12.

*1. Negotiations with the Debtor*

The letter to the Debtor's counsel is not in the record. The Court infers that it stated what arrangements the Trustee would accept on behalf of the estate for the Debtor to retain the residence. Statements of the Trustee and counsel for the Debtor at the Hearing indicate that the letter may have asserted an entitlement to all of the nonexempt equity in the residence, even though substantially less than that would be required to pay all creditors in full. Later settlement discussions after the filing of the conversion motion apparently took this into account.

A chapter 7 trustee's duties include negotiations with regard to the liquidation of estate assets.[47] A trustee may, of course, use a lawyer to assist in such negotiations when necessary, but the Trustee and his law firm have not shown that any legal services were required to determine what the estate should properly realize from the nonexempt equity in the residence or to communicate payment the Trustee would accept from the Debtor to enable the estate to realize the value of its interest in the property instead of selling it. The law firm is not entitled to compensation for drafting the letter to the Debtor's counsel.

*2. Negotiation of listing agreement*

A chapter 7 trustee's duty to sell the estate's real estate involves the negotiation of a listing agreement with the real estate broker the trustee selects to market and sell the property and applying to the court for approval of the broker's employment as § 327(a) requires. This Section considers whether the Trustee's law firm is entitled to compensation for services relating

---

[47] *Accord, e.g., In re Garcia,* 335 B.R. 717, 726-27 (B.A.P. 9th Cir. 2005) (trustee's duty to negotiate with debtor's attorney concerning equity in property); *In re Virissimo,* 354 B.R. 284, 293 (Bankr. D. Nev. 2006).

to the listing agreement.  Section III(B)(3) discusses compensation for filing the employment application.

The listing agreement in this case is the broker's standard form for the listing of residential real property.  [26] at 6.  Generally, discussions and negotiations concerning the terms of a listing agreement are trustee work.[48]

In this case, however, the Trustee drafted special stipulations that became part of the listing agreement, and the law firm seeks compensation for this work.  The question is whether the special stipulations presented unique difficulties that required legal services in this case.

The special stipulations include the following, [26] at 12:

1.  A statement defining the "Seller" as the Trustee, as and only as the bankruptcy trustee.

2.  A statement, referencing Seller's Property Disclosure Statement and Official Wood Infestation Report, that the Seller has no specific knowledge and makes no representations concerning the condition of the property, and that the property is being sold, "as is, where is."

3.  A statement that the information in the listing agreement is true and correct "to the best of the Seller's knowledge," but that the Seller is a bankruptcy trustee who has no knowledge of the property.

4.  A statement that the terms are subject to approval of the Court and not binding without such approval.

5.  A statement that any sales contract is subject to approval of the Court and that no commission will be paid unless the Bankruptcy Court approves the sale and it closes.

---

[48] *See, e.g., In re Garcia,* 335 B.R. 717, 726 (B.A.P. 9th Cir. 2005); *In re Jay,* 2018 WL 2176082 at * 12 (Bankr. D. Utah 2018), *aff'd* 2019 WL 4645385 (D. Utah 2019); *In re King,* 546 B.R. 682, 701, 706 (Bankr. S.D. Tex. 2016).

6.  A provision for closing of the sale not later than ten days after entry of the Court's order approving the sale.

7.  A provision for the Seller to select the closing attorney.

8.  A requirement of earnest money of at least two percent of the purchase price.

9. A statement that the Seller will make no repairs to the property.

Most of these provisions are appropriate,[49] and indeed necessary, for the protection of the interests of the estate and the Trustee.  Some of the special stipulations properly reflect the bankruptcy context of the sale and the role of a trustee.  They do not arise in a nonbankruptcy context.  Others are business terms (the date of closing, the earnest money requirement, and the repair provision).

Providing for bankruptcy-related stipulations requires an understanding of principles of bankruptcy law and procedure that are different from the ordinary listing of residential real estate.  Each of them takes account of important legal issues that could arise in the course of the listing, marketing, and sale of the property.  All of this involves understanding and analysis of how the bankruptcy process affects the legal relationships among a trustee, the broker, and any purchaser.

The bankruptcy stipulations reflect careful practice by the Trustee.  Nevertheless, these important issues are not unique to this case.

Chapter 7 trustees regularly sell residential real estate in a consumer bankruptcy case.  As in this case, "special" stipulations that are necessary in a listing agreement for a trustee's sale of estate property are not special at all.  They are routine in the course of any case involving the sale of a residence.

---

[49] The Court expresses no opinion on the stipulation that the Trustee select the closing attorney.

As Section I(A) explains, the United States Trustee selects chapter 7 trustees who necessarily have the competence, experience, and skill to negotiate the terms of a listing agreement to include terms that bankruptcy cases routinely require. The Trustee and his law firm have not justified why the Trustee required legal advice to know what routine provisions should be included in the listing agreement in this case or legal assistance to "draft" special stipulations that appear to be standard in the context of a panel trustee's sale of residential real estate.

Nothing in this case indicates that the broker's form and the special stipulations involved any unique or complex legal issues. Accordingly, the Trustee required no legal representation with regard to the "special" stipulations. Even if he were not a lawyer, the Trustee knew from previous cases that the standard bankruptcy terms should be included in the listing agreement as a matter of course and how to do it.

The Court concludes, therefore, that the services relating to the special stipulations in this case were part of the Trustee's statutory duty to liquidate the estate's real estate. As such, they are not compensable.

*3. Application to employ real estate broker*

Under §  327(a), a chapter 7 trustee's retention of professionals, including a real estate broker, requires approval of the bankruptcy court. The issue is whether, in the circumstances of this case, the Trustee needed legal services to file a routine application to employ the broker. The Court notes that nonlawyer chapter 7 trustees in this District accomplish the sale of real estate without a lawyer.[50]

---

[50] Attached as Appendix C is a list of motions to sell property that a nonlawyer trustee filed in this District from 2017 to 2019 without a lawyer. The Court takes judicial notice of the records in these cases under Fed. R. Evid. 201(c)(1), as stated in the August 19 Order and without objection from any party.

The initial question is whether a chapter 7 trustee *must* have a lawyer to file an application to retain a real estate broker.  The fact that a chapter 7 trustee is a lawyer is immaterial.  If a lawyer is required, the task necessarily is not a trustee duty, and compensation for the services as legal work is allowable.[51]

Section 1654 of title 28 of the United States Code provides:

In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

The statute applies only to natural persons; it does not permit a corporation or other entity to appear in federal court except through licensed counsel.[52]

Courts have applied the rule to prohibit an individual who serves as the trustee for a trust or as the personal representative of an estate from representing the trust or estate unless the trust or estate has no creditors and the individual is the sole beneficiary.[53]  Because a bankruptcy

---

[51]   In other words, the analysis assumes that a chapter 7 trustee is not an "individual" in the sense of being a natural person.  Thus, the general rule authorizing a natural person to proceed in a court without a lawyer does not apply, even if the trustee is a lawyer.

The Court accepts the Trustee's proposition that the filing of papers in a court by an individual in the individual's capacity as a fiduciary constitutes the unauthorized practice of law under state laws.  The Trustee contends that the Florida Bar has applied the principle to a nonlawyer trustee in a bankruptcy proceeding but has not provided a citation to any authority.

The Court concludes, however, that what a nonlawyer chapter 7 trustee may properly file in a bankruptcy court without a lawyer is a question of federal bankruptcy law.

[52] *E.g.*, *Rowland v. California Men's Colony,* 506 U.S. 194, 202 (1993) ("[T]he lower courts have uniformly held that 28 U.S.C. § 1654,  providing that 'parties may plead and conduct their own cases personally or by counsel,' does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney."); *J. J. Rissell, Allentown, P.A. Trust v. Marchelos,* 976 F. 3d 1233 (11th Cir. 2020) (trust); *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985).

[53] *E.g., J. J. Rissell, Allentown, P.A. Trust v. Marchelos,* 976 F. 3d 1233 (11th Cir. 2020) (trust); *Guest v. Hansen*, 603 F.3d 15 (2d Cir. 2010) (estate); *Knoefler v. United Bank of Bismarck,* 20 F.3d 347 (8th Cir. 1994) (trust); *C.E. Pope Equity Trust v. United States*, 818 F.2d 696 (9th Cir. 1987) (trust).

trustee acts as the representative of the estate[54] and creditors have an interest in the estate, the question is whether the same rule applies to require a chapter 7 bankruptcy trustee to have a lawyer to file any pleading in a bankruptcy court.

The nature of proceedings in bankruptcy courts for the administration of estate assets in Chapter 7 cases suggests that the rule of 28 U.S.C. § 1654 applicable in a federal lawsuit between discrete parties should not be extended to apply to a chapter 7 trustee's filing of routine papers that the Bankruptcy Code and Bankruptcy Rules require in connection with the sale of property.

In this regard, 28 U.S.C. §1654 and the case law establishing the rule have their roots in 18th and 19th century practice in federal courts[55] when the availability of bankruptcy relief was either nonexistent or short-lived.[56] The statute could not have contemplated routine proceedings in a bankruptcy case concerning the liquidation of estate assets that do not involve litigation. Routine and uncontested proceedings in a bankruptcy case are quite different from lawsuits that involve parties asserting claims and defenses to establish their rights and obligations.

---

[54] § 323(a).

[55] Section 35 of what is known as the Judiciary Act of 1789 is the statutory predecessor to 28 U.S.C. § 1654 and contained substantially the same language. *See United States v. Dougherty*, 473 F.2d 1113, 1123 n. 10 (D.C. Cir. 1972).

Section 35 of the Judiciary Act of 1789, 1 Stat. 73, 92 (1789), provided in pertinent part:

[I]n all the courts of the United States, the parties may plead and manage their own causes personally or by the assistance of such counsel or attorneys at law as by the rules of the said courts respectively shall be permitted to manage and conduct causes therein.

*Act to Establish the Judicial Courts of the United States*, ch. 20, § 35, 1 Stat. 73, 92 (1789).
[56] *See* Charles Jordan Tabb, *The History of the Bankruptcy Laws in the United States,* 3 Am. Bankr. Inst. L. Rev. 5, 12-23 (1995). *See also* W. HOMER DRAKE, JR., ET AL., CHAPTER 13 PRACTICE AND PROCEDURE § 1:2 (2020).

Moreover, a chapter 7 trustee is an officer of the bankruptcy court.[57]  Surely an officer of the court may file routine papers necessary for the proper performance of the trustee's statutory duties.

The statutory qualifications for the appointment of panel trustees confirm that chapter 7 trustees can carry out their duties without a lawyer, at least for routine matters.  Section 586(d)(1) of Title 28 expressly states that the qualifications for membership on a panel of private trustees may not include a requirement that the individual be an attorney.  Because Congress specified that a panel trustee need not be a lawyer, it must have intended that a nonlawyer be able to perform the trustee's statutory duties without a lawyer.[58]

Without discussing 28 U.S.C. § 1654, bankruptcy courts have recognized that a trustee may file papers in a bankruptcy court without a lawyer in the course of performing the trustee's duties.  Thus, courts have concluded, for example, that the filing of applications to retain

---

[57] *See, e.g., Barton v. Barbour*, 104 U.S. 126 (1881); *Grant, Konvalika & Harrison, P.C. v. Banks (In re McKenzie),* 716 F.3d 404, 413-14 (6th Cir. 2013); *McDaniel v. Blust,* 668 F.3d 153, 157 (4th Cir. 2012); *Lebovits v. Scheffel (In re Lehal Realty Associates)*, 101 F.3d 272, 276 (2d Cir. 1996).

[58] *See In re Perkins,* 244 B.R. 835 (Bankr. D. Montana 2000).  The court stated, *id.* at 842 (footnote omitted):

Trustees are charged under the Bankruptcy Code with the responsibility of overseeing bankruptcy cases. Congress certainly contemplated that trustees would be performing activities which could conceivably be construed as the practice of law. However, as the U.S. Trustee states in his brief, the standards for qualifications of trustees are quite high. *See* 28 C.F.R. § 58.3(6). Congress obviously took the trustee's qualifications into account when drafting the Bankruptcy Code and contemplated that these highly qualified individuals could and would perform the duties set forth in § 704, *i.e.,* conservation of estate assets for the benefit of creditors. *See In re Lowery,* 215 B.R. [140] at 142 [(Bankr. N.D. Ohio 1997)] (A trustee has the skill and expertise to perform the duties set forth in § 704 "by virtue of being a member of the United States Trustee's panel of trustees.").

professionals[59] and routine objections to claims[60] in chapter 7 cases are trustee duties that are not compensable as legal services.

The Court agrees with these courts and concludes that a chapter 7 trustee may perform the statutory duty of filing an application to retain a broker to sell the estate's real property[61] without the necessity of using a lawyer.[62]

---

[59] *E.g.*, *In re Garcia,* 335 B.R. 717, 726 (B.A.P. 9th Cir. 2005); *In re Jay,* 2018 WL 2176082 at * 12 (Bankr. D. Utah 2018)*, aff'd* 2019 WL 4645385 (D. Utah 2019) ("[I]n simple cases, trustees should prepare applications to employ realtors or accountants as they are seldom contested and routinely granted."); *In re McLean Wine Co., Inc.,* 463 B.R. 838. 848-49 (Bankr. E.D. Mich. 2011) (application to employ other professionals is trustee work); *In re Peterson,* 566 B.R. 179, 195, 207-08 (Bankr. M.D. Tenn.  2017) (application for employment of professionals, including accountant and special counsel, is trustee duty).  *Contra, e.g., In re Yovtcheva,* 590 B.R. 307 (Bankr. E.D. Pa. 2018); *In re Hambrick,* 2012 WL 10739279, at * 5 (Bankr. N.D. Ga. 2012) (Massey, J.); *In re Holub,* 129 B.R. 293, 296 (Bankr. M.D. Fla. 1991).

[60] *E.g., In re King,* 546 B.R. 682, 699 (Bankr. S.D. Tex. 2016) (Routine objection to claim which is unopposed and does not require legal analysis or a brief falls within trustee's duty); *In re Lexington Hearth Lamp and Leisure, LLC,* 402 B.R. 135 (Bankr. M.D.N.C. 2009) (Although the court concluded that compensation is allowed for services that require a law license, *id.* at 142, the court ruled that the filing of objections to claims that require no legal analysis is a trustee duty.  *Id.* at 144-45.) *In re Perkins,* 244 B.R. 835 (Bankr. D. Montana 2000); *In re Holub,* 129 B.R. 293, 296 (Bankr. M.D. Fla. 1991).  *Contra, e.g., In re Howard Love Pipeline Supply Co.,* 253 B.R. 790 (Bankr. E.D. Tex. 2000) ("[T]he express duty of the trustee to object to improper claims does not authorize a non-attorney trustee to engage in the unauthorized practice of law.").

[61] The same principles support the practice of nonlawyer trustees in this District who file motions to obtain authority to sell real estate under 11 U.S.C. § 363(b).  See *supra* note 50.

Section 363(b) authorizes a trustee to sell property of the estate other than in the ordinary course of business "after notice and a hearing."  It does not require that the Court approve the sale or enter an Order that authorizes it.  Bankruptcy Rule 6004(a) similarly requires notice of a sale not in the ordinary course of business but does not require an order.  Furthermore, Bankruptcy Rule 6004(f)(2) authorizes a trustee to execute any instrument necessary *or* ordered by the court to effectuate transfer of property.  Accordingly, the filing of a motion to sell real estate is not necessary, and nothing requires entry of an order unless someone timely objects to the proposed sale after notice of the proposed sale.

Nevertheless, the routine practice for a trustee's sale of real property in this District (and others) is for the trustee to file a motion seeking an order authorizing the sale, perhaps because the existence of a written order provides confirmation that the trustee's sale complies with the Bankruptcy Code and Bankruptcy Rules, which provides comfort to a title examiner, and because a trustee has immunity when acting pursuant to a court order.

The substitution of a motion for a notice, and the entry of a routine order authorizing a sale, does not, in the absence of an objection, turn a routine administrative process into a legal

The fact that a chapter 7 trustee does not *have* to use a lawyer to file an application does not end the inquiry.  The next question is whether the Trustee and his law firm have established that the circumstances of this case justified the use of a lawyer, in the exercise of the Trustee's reasonable business judgment, to file the application.

Chapter 7 trustees exercise discretion in the administration of estates, and bankruptcy courts properly defer to their business judgment in determining how to perform their duties.  This includes a trustee's decision to use a lawyer to retain a professional.

But when the trustee and the lawyer are the same person, § 328(b) requires that the trustee-attorney justify separate compensation for legal services by showing the existence of "unique circumstances" or issues involving "unique difficulties" that require legal work, as Section I(C)(3) explains.  The *Chapter 7 Handbook*, at 4-21, thus instructs, "The trustee may not be employed as counsel or accountant to provide services that a trustee could perform without professional assistance."

The question, therefore, is whether in the circumstances of this case the Trustee could have filed the application to employ the broker without a lawyer.  Discussion begins with a review of the Bankruptcy Code's requirements for a trustee's employment of a professional.

---

proceeding that requires a lawyer. *Accord, In re Peterson,* 566 B.R. 179, 194 (Bankr. M.D. Tenn. 2017) ("The filing of a document with the court does not transform the task into one that must be accomplished with the assistance of counsel.").

[62] The contrary conclusion is that the trustee must either be or have a lawyer because a nonlawyer trustee cannot file a motion in the bankruptcy court.  *E.g., In re Hambrick,* 2012 WL 10739279, at * 5 (Bankr. N.D. Ga. 2012) (Massey, J.); *In re Lexington Hearth Lamp and Leisure, LLC,* 402 B.R. 135, 142 (Bankr. M.D.N.C. 2009); *In re Howard Love Pipeline Supply Co.,* 253 B.R. 790 (Bankr. E.D. Tex. 2000).  For reasons stated in the text, the Court disagrees with this conclusion.

Section 327(a) imposes two important legal requirements for employment of a professional, including a real estate broker.  The professional must be a "disinterested person" and must not "hold or represent an interest adverse to the estate."  § 327(a).

Determination of whether a professional is a "disinterested person" requires reference to its statutory definition.  A "disinterested person" is a person who:  (A) is not a creditor, equity security holder, or insider; (B) is not, and for the two years prior to the filing of the petition has not been, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the estate or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.  § 101(14).

Bankruptcy Rule 2014  states the requirements for a trustee's application for an order approving the employment of a professional.  The application must state the specific facts showing the necessity for the employment, the person to be employed, the reasons for the selection, the professional services to be rendered, the arrangements for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, the United States Trustee, other parties in interest, and their attorneys.  The application must include a verified statement of the professional that sets forth the professional's connections.

To a stranger to the bankruptcy court, these requirements for the trustee's employment of a professional may seem so complex and complicated that a trustee must have a lawyer's assistance to navigate them.  But as Section I(A) explains, a panel trustee, selected and supervised by the United States Trustee, is not a stranger.

To panel trustees, the requirements for employment of professionals are well-known and in almost all cases routine.  Unless unusual circumstances exist, a panel trustee can determine

33

that a broker is disinterested and has no conflict with the estate as § 327(a) requires, can prepare and file a routine application for approval of the broker's retention, and can submit a proposed order in a standard form that approves it.[63]  Unless an objection to the application is filed or the bankruptcy court declines to approve the application for some reason, the process does not involve any litigation.

In this case, the record reflects that the application to employ the real estate broker, the broker's verified statement, and the order approving it are routine.  The Trustee and his law firm have not established any unique difficulties or circumstances that justify this work as legal in nature.  Accordingly, the law firm is not entitled to compensation for filing the application to employ the broker.[64]

For these reasons, the law firm in the circumstances of this case is not entitled to compensation for doing trustee work with regard to the sale of the residence.  These are services for which a trustee receives compensation.[65]

---

[63] Panel trustees may file documents electronically without a lawyer.

[64] *Accord, e.g., In re Garcia,* 335 B.R. 717, 726 (B.A.P. 9th Cir. 2005); *In re Jay,* 2018 WL 2176082 at * 12 (Bankr. D. Utah 2018), *aff'd* 2019 WL 4645385 (D. Utah 2019) ("[I]n simple cases, trustees should prepare applications to employ realtors or accountants as they are seldom contested and routinely granted.");  *see In re McLean Wine Co., Inc.,* 463 B.R. 838. 848-49 (Bankr. E.D. Mich. 2011) (application to employ professionals is trustee work); *In re Peterson,* 566 B.R. 179, 195, 207-08 (Bankr. M.D. Tenn.  2017) (application for employment of professionals, including accountant and special counsel, is trustee duty).  *Contra, e.g., In re Hambrick,* 2012 WL 10739279 (Bankr. N.D. Ga. 2012) (Massey, J); *In re Parkins,* 2011 WL 1167295 (Bankr. E.D. Va. 2011); *In re Lexington Hearth Lamp and Leisure, LLC,* 402 B.R. 135, 142 (Bankr. M.D.N.C. 2009); *In re Howard Love Pipeline Supply Co.,* 253 B.R. 781, 790 (Bankr. E.D. Tex. 2000)

[65] The Court notes that, had the Trustee sold the residence, the calculation of the commission under § 326(a) would be based on disbursement of $ 110,396.71 at the closing of the sale to satisfy encumbrances and to pay the real estate broker.  The compensation based on these disbursements is $ 8,769.83.  Given this compensation structure, it is fair to expect that a chapter 7 trustee perform routine services necessary for the retention of a broker without the additional expense to an estate of legal fees.

### C.  Opposition to Conversion to Chapter 13

Over half of the compensation the Trustee's law firm requests, $ 6,802.50, is for services in opposition to the Debtor's motion to convert.  The Court in its August 19 Order expressed its concern that the Trustee's opposition was neither necessary nor beneficial to the estate.  The Court questioned whether the facts supported denial of conversion and whether denial of conversion would serve any purpose because conversion would result in either the Debtor's payment of all creditors in full under a confirmed plan or the reconversion of the case to Chapter 7.

The Trustee asserts that, in his experience, judges in this District conduct "mini-trials" on issues of bad faith and feasibility that a chapter 7 trustee raises in an objection to conversion.[66] His experience and skill, he asserts, warranted his handling of the objection as lead counsel, "particularly with the expectation of a mini-trial being conducted."[67]

The Trustee states that he now knows that this judge is "one of the judges who would not conduct a mini-trial" and that "it is not fair to view this in hindsight."[68]  Rather, he concludes, the Trustee and his law firm "are entitled to full compensation because (a) they took a case that presented itself as a no asset case with no distribution to creditors and turned it into a case with full repayment to all creditors, and (b) all the time incurred and the cost of that time was fully justified."[69]

As an initial matter, the Trustee is mistaken about the way this judge considers objections to conversion of a case from chapter 7 to chapter 13.  In fact, like all the judges in this District,

---

[66] Supplement to Application for Final Compensation ¶2 (hereinafter "Supplement"), [71] at 1.
[67] Supplement, [77] at ¶ 3.
[68] Supplement, [77] at ¶ 5.
[69] Supplement, [77] at ¶ 5.

this judge holds a hearing on an objection to conversion and will schedule a later evidentiary

hearing when the determination requires resolution of disputed facts.[70]

---

[70] The Bankruptcy Code and Bankruptcy Rules do not clearly specify procedural requirements for converting a case from chapter 7 to chapter 13.

11 U.S.C. § 706(a) permits a debtor to convert a case to chapter 11, 12, or 13 "at any time" if the chapter 7 case has not been converted from one of those chapters. Unlike § 706(b), which permits conversion to chapter 11 on request of any party in interest (which includes the debtor), § 706(a) does not contain a requirement of notice and a hearing on a request for conversion. Only a debtor may seek to convert a chapter 7 case to chapter 13.

Bankruptcy Rule 1017(f)(1) generally requires a motion under Bankruptcy Rule 9014 to convert a case to another chapter, but by its own terms does not apply this rule to a debtor's motion to convert from chapter 7 to chapter 13 under § 706(a). A motion under Rule 9014 must be served in the manner provided for service of summons and complaint by Bankruptcy Rule 7004, and "reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Bankruptcy Rule 9014(a), (b).

Bankruptcy Rule 1017(f)(2) provides that conversion under § 706(a) "shall be on motion filed and served as required by Rule 9013." Bankruptcy Rule 9013 requires service of a motion on the trustee "and on those entities specified by [the Bankruptcy Rules] or "the entities the court directs if these rules no not require service or specify the entities to be served." Rule 9013 does not require service under Bankruptcy Rule 7004, and it does not require a hearing. No other Bankruptcy Rule requires service of a motion to convert from chapter 7 to chapter 13.

Because Bankruptcy Rule 9014 requires notice and an opportunity to be heard and Bankruptcy Rule 9013 does not, it appears that the Bankruptcy Rules do not require prior notice of, or an opportunity to be heard on, a debtor's motion to convert from chapter 7 to chapter 13.

Bankruptcy Rule 2002(a)(4) requires notice of a hearing on conversion of a chapter 7 case to another chapter. But it does not require a hearing and, therefore, does not displace the provisions of Rule 1017(f) that permit conversion without a hearing.

The procedures that judges in this District follow vary depending on the way that the debtor's lawyer presents the request for conversion.

Some lawyers file a motion for conversion for the judge's consideration without a hearing, as Bankruptcy Rules 1017(f)(2) and 9013 permit. In that situation, every judge in this District defers entry of an order converting the case for a brief time to give the chapter 7 trustee (or any other party) an opportunity to file an objection. If no objection is filed, the judge may enter an order converting the case. If an objection is filed, the judge schedules it for a hearing on the judge's regular consumer calendar.

Other lawyers use the judge's self-calendaring procedures to schedule their conversion motions for a hearing on the judge's regular consumer calendar. If no one files an objection to conversion and no one at the call of the calendar opposes conversion, the court converts the case without a further hearing.

All of the judges in this District conduct a hearing on a contested conversion motion.

The judge hears the basis for the opposition to conversion, the debtor's response to it, and asks what, if any, facts are in dispute. If the judge determines that no facts are in dispute, the

The Trustee may be correct that the Court would not have conducted a "mini-trial" in this case on the issues of bad faith and feasibility,[71] but not because the Court does not hold them.

A candid recitation of the facts in this case at the originally scheduled hearing would have conclusively shown no basis for denial of conversion based on bad faith. Indeed, the facts utterly belie the Trustee's accusation of bad faith, as later text demonstrates.

With regard to feasibility, the Court at the initial hearing would have expected the Debtor's counsel to explain how the Debtor could make payments under a plan when his chapter 7 budget showed no ability to do so. As later text explains, the predictable response in this case, as it is in most others, would have been that the Debtor knew his budget would need adjustments and that he was confident he could made changes to fund a plan, either through reducing expenditures, obtaining other sources of funding, or both. Unless the Trustee represented that he had a factual basis to dispute feasibility in view of the anticipated changes in the budget, the Court would have converted the case without an evidentiary hearing.

On the other hand, if the Trustee had shown a credible basis for a finding that the Debtor had no reasonable prospects for being able to fund plan payments, or if the Debtor's counsel had not shown that the Debtor could make payments under a plan to the Court's satisfaction, the Court would have directed the filing of a proposed chapter 13 plan and an amended budget and would have scheduled an evidentiary hearing.

The Court is confident that this judge's approach is consistent with the way that other judges in this District handle objections to conversion in cases like this one.

---

judge may rule on the motion at the hearing. Otherwise, the judge specially sets the matter for an evidentiary hearing.

[71] One of the requirements for confirmation of a chapter 13 plan is, "The debtor will be able to make all payments under the plan and to comply with the plan." § 1325(a)(6). This requirement is colloquially referred to as the "feasibility" requirement.

But as later text discusses, the question is not what procedures this judge would have followed. The question is whether the opposition to conversion in the circumstances of this case was necessary or beneficial to the estate in view of the facts: (1) that the Debtor's plan would have to provide for full payment of creditors to meet requirements for confirmation in a chapter 13 case; (2) that conversion to chapter 13 followed by a nonconfirmable plan would have resulted in reconversion to chapter 7; and (3) that the prospects for preventing conversion based on feasibility were predictably remote.

The Trustee's conclusion that the services he and his law firm provided are the cause of full payment of creditors is also wrong.

The Trustee insists that, in the absence of his opposition, the Chapter 13 trustee would have accepted the Debtor's scheduled value of his residence and that unsecured creditors would receive nothing based on the apparent lack of equity. Counsel for the Chapter 13 trustee at the Hearing disputed this contention and stated that the Chapter 13 Trustee reviews the value of a debtor's residence in all cases. Investigation of the value of a debtor's residence is a statutory duty of a chapter 13 trustee under § 1302(b).[72]

The cause of full payment to creditors in this case is the value of the residence. It is of course true that the Trustee's investigation of the value of the residence brought its substantial

_____

[72] Section 1302(b)(2)(B) requires a chapter 13 trustee to "appear and be heard" at any hearing concerning confirmation of a plan. As explained in W. Homer Drake, Jr., et al., 2 CHAPTER 13 PRACTICE & PROCEDURE § 17:3, at 387 (2020):

> A significant aspect of the trustee's evaluative role involves consideration of the value of the debtor's property. The Chapter 13 trustee must perform a liquidation analysis to ensure that the plan meets the best interest of creditors test of Code § 1325(a)(4), i.e., that each unsecured creditor is receiving as much as it would if the case were filed under Chapter 7.

nonexempt equity to light, but that is a routine part of a chapter 7 trustee' job.[73]   In any event, as later text explains, there is no causal connection between the Trustee's opposition to conversion and the fact that creditors will receive payment in full.

The Court agrees with the Trustee that it is not fair to evaluate the law firm's services in opposing confirmation in hindsight.  Section 330(a)(3)(C) expressly requires the court to determine whether a service was necessary or beneficial "at the time at which the service was rendered."

The Court therefore reviews the circumstances of the case at the time the Debtor filed the conversion motion, when the Trustee and his law firm knew the following:

1.  The Debtor's residence had substantial equity, and its sale would produce more than enough money to pay all claims in full.

2.  The Trustee heard the Debtor's testimony at the § 341(a) meeting that he "had no clue" what the residence was worth.

3.  The Debtor's Schedules I and J showed no disposable income to fund a chapter 13 plan, and the budget did not include expenses for maintenance, repair, and upkeep of the residence.

4.  To meet the confirmation requirement of  the so-called "best interest of creditors" test in § 1325(a)(4), the Debtor's plan would have to provide for full payment of all unsecured claims

---

[73] See *Chapter 7 Handbook* at 4-5.  It states that, in determining whether property has value to the estate that would result in a meaningful distribution to creditors, the trustee needs to consider a number of issues, including the fair market value of the property. To determine value, "the trustee can consult with the debtor and the debtor's attorney, have the secured party provide documentation as well as the pay-off statement, obtain price lists, conduct physical inspections or appraisals, and use common sense. Other valuation methods include the NADA book for automobiles; information acquired from real estate agents; county records regarding recent sales of comparable real property; Internet searches and web sites; and advertisements for the sale of like goods. The basis for the value must be documented. 28 U.S.C.§ 586."  *Id*. at 4-5.

because creditors in the chapter 7 case would receive payment in full under § 726(a)(3) and (5) based on the amount the chapter 7 estate would realize from the sale of the residence.[74]

Conversion of this case to chapter 13 could have only two consequences.  Both were obvious when the Debtor moved to convert.

One possible consequence was confirmation of a plan providing for the payment of all unsecured claims in full, and the Debtor's completion of plan payments.  All creditors would be paid in full.

The second possible consequence was reconversion of the case to chapter 7 because of denial of confirmation of a plan or the Debtor's default under a confirmed plan.  Sale of the residence would then proceed in the reconverted chapter 7 case.  All creditors would be paid in full.

The only other theoretical consequence that could prevent full payment of creditors in this case was dismissal of the chapter 13 case, rather than conversion.  Although § 1307(b) generally requires the Court to dismiss a chapter 13 case at the debtor's request, it does not give that right to a debtor in a case converted from chapter 7.

Section 1307(c) permits dismissal *or* conversion, for cause,  "whichever is in the best interests of creditors and the estate." "Cause" includes denial of confirmation and material default by the debtor under a confirmed plan.   § 1307(c)(5), (6).  When either of these circumstances occur in a converted case when the estate's assets have substantial equity, the Chapter 13 Trustee invariably seeks reconversion rather than dismissal.

The Court cannot imagine any set of circumstances that might have existed at the time the Trustee opposed conversion, or that might exist at any time in the future, under which

---

[74] *See* W. Homer Drake, Jr., et al., 1 CHAPTER 13 PRACTICE & PROCEDURE §§ 7:6, 7:8 (2020).

40

dismissal would be in the better interests of creditors and the estate than reconversion and thus cannot imagine any set of circumstances under which it would permit the Debtor to dismiss, rather than reconvert, this case.

Simply put, when the Debtor moved to convert this case, it was a certainty that creditors would be paid in full, regardless of whether conversion occurred.  Denial of conversion could have resulted in earlier payment of creditors in the chapter 7 case, but conversion could not possibly prevent payment of all claims in full.

The Trustee nevertheless opposed conversion, asserting that the Debtor filed the conversion in bad faith, that the Debtor had no disposable income such that he could not propose a feasible plan, and that conversion would not be in the best interest of creditors.[75]  In its August 19 Order, the Court expressed its concern that the record in the case indicated that the Trustee could not have prevailed in his opposition.  Having heard from the Trustee, the Court concludes, based on the facts known to the Trustee at the time of his objection, that the prospects for denial of conversion of this case were nonexistent or, at best, minimal.

Section 706(a) generally permits a chapter 7 debtor to convert a case to chapter 13 "at any time." As the Supreme Court ruled in *Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365 (2007), however, § 706(d) qualifies this right by permitting conversion only if the debtor may be a debtor under chapter 13.

In *Marrama*, the Supreme Court held that a court may deny a debtor's request to convert a case from Chapter 7 to Chapter 13 where "cause" exists under § 1307(c) to dismiss the case or convert it back to chapter 7. 549 U.S. at 373.  The *Marrama* Court ruled that the debtor's bad faith was cause under § 1307(c) that precluded the debtor from proceeding in a chapter 13 case

---

[75] Trustee's Objection to Conversion ¶¶ 19-23, [38] at 4-5.

and that, therefore, the bankruptcy court properly denied the conversion motion.  549 U.S. at

374-75.

The *Marrama* Court did not attempt to "articulate with precision what conduct qualifies

as 'bad faith' sufficient to permit a bankruptcy judge to dismiss a Chapter 13 case or to deny

conversion from Chapter 7."  549 U.S. at 375, n. 11.  The Court observed, *id.*:

> It suffices to emphasize that the debtor's conduct must, in fact, be atypical.  Limiting
>
> dismissal or denial of conversion to extraordinary cases is particularly appropriate in light
>
> of the fact that lack of good faith in proposing a Chapter 13 plan is an express statutory
>
> ground for denying plan confirmation.

The basis for the Trustee's accusation of bad faith is, "Based on the Debtor's value of

only $ 117,692 when compared with Trustee's value of $ 215,000, it appears that Debtor

purposely undervalued the Property to hide the true equity therein, thereby evidencing bad

faith."[76]  The Trustee also asserted, "Debtor is not seeking a conversion of his Bankruptcy Case

in a good faith effort to pay his creditors, but in an effort not to pay them in direct response to

Trustee's interest shown in his Property."[77]

The facts known by the Trustee when he filed his opposition to conversion do not support

these allegations of bad faith and actually contradict them.

The problem with the first allegation is that the Trustee knew that the Debtor had testified

at the § 341(a) meeting that he "did not have a clue" about the value of the residence.  Because

---

[76] Trustee's Objection to Conversion ¶ 21, [38] at 5.
[77] Trustee's Objection to Conversion ¶ 23, [38] at 5.

the Debtor had no clue about the value of his property, he could not have intentionally undervalued it to conceal its value from the Trustee or anyone else.[78]

The problem with the second allegation is that the Debtor could not possibly avoid paying creditors by converting to chapter 13.  His attorney must have explained, and the Debtor therefore must have known, that he would have to pay his creditors in full in a chapter 13 case. He could not have sought conversion with the intent to avoid paying creditors because he could not have intended to do what he knew he could not do.

The Trustee has identified no other indicia of bad faith.  The obvious and undisputed facts known at the time the Debtor sought conversion do not come close to showing that this case is an  "atypical" or "extraordinary" case in which denial of conversion could be appropriate under *Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365, 375 n. 11 (2007).  The Trustee could not possibly have prevailed on this issue.

The second ground for denial of conversion was lack of feasibility.  The Trustee correctly points out that the Debtor's budget on Schedules I and J filed with his chapter 7 petition shows no disposable income to fund a plan and includes no provisions for expenses for home maintenance, repairs, or upkeep.[79]

This means that the Debtor could not propose a confirmable plan, because § 1325(a)(6) conditions confirmation on a finding that "the debtor will be able to make all payments under the plan and to comply with the plan."  Denial of confirmation is cause for reconversion of the case to chapter 7 under § 1307(c)(5).

---

[78] The Trustee may not have known it at the time, but according to Debtor's counsel at the Hearing, the value was based on the law firm's use of an internet valuation service that she said is usually reliable.  The record does not show whether the Trustee asked the Debtor or his counsel the basis for the valuation of the property at the § 341(a) meeting or thereafter.

[79] Supplement ¶ 3, [71] at 2.

*Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365 (2007), broadly read, holds that a bankruptcy court may deny conversion to chapter 13 when the chapter 13 case will result in reconversion. *Id.* at 375.[80]

A stranger to consumer bankruptcy cases could easily reach the conclusion, with a high degree of certainty, that the Trustee would prevail on his feasibility objection. A nonbankruptcy trial lawyer would conclude that the Court must deny conversion as a matter of law because the applicable legal rule is that the Debtor must be able to make payments under a plan and because the Debtor's own sworn statements prove that he cannot.

Bankruptcy lawyers and judges, however, understand, based on experience and the practical realities in consumer bankruptcy cases, that the predictable outcome in almost all cases like this is conversion to chapter 13. The reason is that in the usual case the debtor will be able to make at least a facial showing of feasibility so that the court will permit conversion to give the debtor a chance to get confirmation of a chapter 13 plan.

A debtor's chapter 7 schedules I & J do not provide a reliable basis for a determination that a chapter 13 plan is not feasible. In the first place, a debtor's chapter 7 schedules I and J represent income and expenses on the date of filing in the context of a chapter 7 case. The chapter 7 budget does not always reflect expenses in a chapter 13 case. For example, a debtor keeping a car in a chapter 7 case lists a car payment as an expenditure, but a car loan under a chapter 13 plan is typically paid from the debtor's plan payments.

---

[80] Narrowly read, *Marrama* limits denial of conversion to "atypical" and "extraordinary" cases. 549 U.S. at 375 n. 11. The court doubts that the apparent inability of a debtor whose chapter 7 schedules I and J do not reflect sufficient income to fund a plan is either atypical or extraordinary. Similarly, the Court questions whether *Marrama* provides the basis for turning a routine request for conversion to chapter 13 in a case with no indication of bad faith or abusive conduct into litigation in the chapter 7 case over whether the debtor will be able to fund a plan.

Further, circumstances change for consumer debtors like they do for anyone, whether in or out of bankruptcy. The liberal amendment rule of Bankruptcy Rule 1009(a) and the right of a debtor to convert to chapter 13 "at any time" recognize this fact of life.

Debtors in chapter 7 cases can and frequently do amend their budgets when they convert to chapter 13 to establish the ability to make payments under a plan in order to retain a home. In the Court's experience, debtors will make extraordinary efforts to do what it takes to retain their homes because it is of vital importance to their overall financial situation and well-being. A home may represent a debtor's only significant asset; it may determine where children go to school; it is the center of their community.

To keep their homes, debtors must reevaluate the motivations and objectives that led them to file initially under chapter 7 and their ability to fund a plan.[81] Debtors may "tighten their belts" by reducing expenses, surrender an unnecessary vehicle, or find other sources of income such as a second job or charitable gifts from church or family, or some combination.

In an ordinary case, a debtor represented by counsel surely realizes that a plan must provide for payments to creditors and how much those payments must be. For both lawyer and client, the filing of a motion to convert presumably reflects a determination that the debtor will be able to make adjustments in the budget necessary to make required plan payments. The lawyer will recognize the need to file amended schedules in the chapter 13 case to demonstrate feasibility.

The Bankruptcy Rules contemplate that a debtor may amend his budget and other papers after conversion. Bankruptcy Rule 1009(a) permits a debtor to amend a list, schedule, or

---

[81] *See generally* W. Homer Drake, Jr., et al., 1 CHAPTER 13 PRACTICE & PROCEDURE § 2:1 (2020).

statement "as a matter of course at any time before the case is closed."  Procedures for

conversion do not require the filing of papers necessary to proceed in chapter 13 as part of the

conversion motion or as a condition to conversion.[82]

Evaluation of whether a bankruptcy court will deny conversion based solely on feasibility

properly takes into account chapter 13's purposes.  Bankruptcy courts recognize, as the *Marrama*

Court recognized, that Congressional policy is that "a debtor should always be given the

opportunity to repay his debts."[83]  Chapter 13's very purpose is to give the debtor an opportunity

to keep property, especially a home, in exchange for paying creditors.[84]  These considerations

favor conversion to give the debtor a chance, especially when conversion poses no risk to

creditors, as it apparently did in *Marrama*.[85]

In most cases, consideration of the feasibility issue may safely be postponed until the

confirmation hearing after conversion.  If feasibility actually is a problem, the Chapter 13

Trustee has the duty to appear and be heard at confirmation and to raise the issue.

§ 1302(b)(2)(B).   Importantly, the Chapter 13 Trustee's prosecution of a feasibility objection

involves no additional expense to anyone.[86]

---

[82]  Under Bankruptcy Rule 3015(b), the deadline for the filing of a plan is 14 days after
conversion of the case.  The Bankruptcy Rules do not require amendments to the schedules upon
conversion, but Bankruptcy Rule 1007(c)(6) requires a Chapter 13 debtor to file a statement of
current monthly income for use in the Chapter 13 case on Official Form B122C-1.

[83]  *Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365, 372 (2007), quoting S.Rep. No.
95–989, p. 94 (1978) and citing H.R.Rep. No. 95–595, p. 380 (1977) (with nearly identical
language).  *See* W. Homer Drake, Jr., et al., 1 CHAPTER 13 PRACTICE & PROCEDURE § 1:5.

[84]  *E.g., Hamilton v. Lanning,* 560 U.S. 505, 508 (2010).

[85]  *Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365, 375 (2007) (The Court reasoned
that § 105(a) "is surely adequate to authorize an immediate denial of a motion to convert filed
under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief
*and may provide a debtor with an opportunity to take action prejudicial to creditors.*")
(emphasis added).

[86]  Notably, the Chapter 13 Trustee is a standing trustee whose fees are based solely on
disbursements under the plan.  11 U.S.C. § 326(b); 28 U.S.C. § 586(e)(1)(B), (e)(2).

The only other ground for the Trustee's opposition to conversion was that it was not in the best interest of creditors to convert to chapter 13 because it would result in delay of payment of their claims.

This is not a legal ground for opposition to conversion. Delay in payment of creditors is an inevitable consequence of conversion in any chapter 7 case with assets. The situation is neither "atypical" nor "extraordinary."

*Marrama* establishes that a bankruptcy court properly denies conversion of a chapter 7 case to chapter 13 when the debtor is ineligible to be a chapter 13 debtor. The fact that conversion results in delay of the payment of creditors has nothing to do with eligibility. It provides no basis for denial of conversion as a matter of law, especially when the conversion motion comes, as it did here, within three months of the filing of the case.

The foregoing discussion inexorably leads to two conclusions.

First, conversion to chapter 13 could not possibly result in creditors not being paid in full. The opposition, therefore, did nothing to enhance or protect the interests of creditors and the estate.

Second, based on the facts known to the Trustee, the chances of the Trustee prevailing were, at best, remote and speculative. The Court is mindful of the careful lawyer's advice to the client that, in litigation, nothing is certain. But a realistic assessment of the simple facts in this case must have led to the conclusion that denial of conversion was unlikely.

In the circumstances of this case, the legal services rendered to oppose conversion were neither beneficial to the estate nor necessary. The prospects of prevailing were remote, at best. More important, conversion posed no risk to creditors. And if, as the Trustee alleged, the debtor could not fund a plan, the eventual result would be denial of confirmation or default after

confirmation, either of which would have led to reconversion to chapter 7, all without any cost to the estate.

Accordingly, the Court will not allow compensation for legal services in connection with the Trustee's opposition to conversion.

The Court notes that Chief Judge Hagenau permitted partial compensation for services rendered by the Trustee's law firm in opposing reconversion of another case to chapter 13 and made this observation:

> The Court appreciates hearing from a trustee as to concerns the trustee may have about a conversion, but particularly where the parties in interest are adequately represented or unharmed, there is no reason for the trustee to duplicate that work.[87]

This Court likewise appreciates hearing a trustee's concerns *when they are well-founded and when conversion might make a difference in how much creditors are paid*.

As earlier text explains, however, in this case the Trustee's allegations of bad faith had no basis, and the feasibility issues in the circumstances of this case did not justify an objection to conversion.  Moreover, unsecured creditors were (and are) going to be paid in this case regardless of what happens, assuming the Trustee's valuation of the home is correct.  Conversion could not harm creditors.

Chapter 7 debtors often seek to convert their cases to chapter 13 to keep their homes or other assets that they thought they would be able to keep in the mistaken belief that they had no

---

[87] *In re Stroud,* 2018 WL 3533347, at *5 (Bankr. N.D. Ga. 2018) (Hagenau), *aff'd in part, rev'd in part, and remanded on other issues,* Civ. Action No. 1:18-CV-3755-LMM, Doc. No. 12 (N.D. Ga. Jan. 29, 2018), *on remand,* Case No. 15-74063, Doc. No. 158 (Bankr. N.D. Ga. May 3, 2019).

nonexempt equity when chapter 7 trustees take action to liquidate them.[88]  A trustee who has

concerns about potential harm to creditors from conversion – whether because of equity in a

residence and the possible dismissal of the case after conversion, lack of feasibility, or another

reason – can file a simple response to the conversion motion stating those concerns or, more

simply, communicate them to the Chapter 13 Trustee.  If the concerns justify denial of chapter 13

relief, the Chapter 13 Trustee will raise them and, if sustained, the case will be reconverted, all at

no expense to the estate.

      In view of these conclusions, the Court need not examine the specific services rendered

in connection with opposition to conversion to determine the extent to which compensation for

them would be allowable.[89]

---

[88] The Court reviewed the 155 motions to convert filed in this District between January 1, 2019,
and August 14, 2020, listed on Appendix E, to attempt to determine the reason for the conversion
motion.

      In cases where a reason could be inferred from activity in the case, the Court's analysis
indicates that the debtor moved to convert after the chapter 7 trustee took some action to sell the
debtor's assets in 47 cases and after a creditor moved for relief from the stay with regard to a
home or vehicle in 20 cases.  It appears that the potential filing of a motion by the United States
Trustee to dismiss for abuse under § 707(b) prompted conversion in 29 cases.

      The Court could not infer a reason for conversion in all of the remaining cases except
four.  Three conversion motions appeared to be in response to a problem with discharge or
dischargeability of a debt, and one occurred after a landlord moved for relief from stay.

      Appendix F summarizes the outcomes of the conversion motions.  In 17 cases, the debtor
withdrew the conversion motion.  Conversion did not occur in seven of them due to dismissal of
the case for failure to pay the filing fee, for want of prosecution, or on motion of the United
States Trustee for cause under § 707(a).

      Conversion occurred in 126 of the remaining 131 cases.  None of the five cases in which
conversion was denied is like this one, as the Court's summaries of the cases on Appendix F
show.

      In accordance with the August 19 Order and a Supplemental Order and Notice entered on
August 28, 2020 [68], the Court, without objection,  takes judicial notice of the records in these
cases pursuant to Fed. R. Evid. 201.

[89] For example, the Trustee's law firm charged $ 1,987.50, based on 3.3 hours of the Trustee's
time and .4 hours of a legal assistant's time, for services relating to settlement.  Time entries on
law firm's invoice (all 2020), 2/12, 2/27, 3/6, 3/11, 3/13, 3/14, 3/16, [56] at 12-13.  The
statements of the Trustee and Debtor's counsel at the Hearing indicate that settlement

**D.  Attorney Retention and Compensation**

The Trustee's law firm charged $ 300 for the application to retain the firm and $ 3,202 for the application for its compensation.  If the Court allows these amounts, the Trustee's law firm would receive compensation of $ 3,502 for filing the applications for its retention and compensation when it provided no necessary services that benefitted the estate.

In Section III(B), the Court concluded that the Trustee's law firm was not entitled to compensation for filing an application to employ a real estate broker.  The same principles require denial of compensation for filing the application to retain the Trustee's law firm.  The Trustee is hiring himself in a routine case.  The Trustee and his law firm have not shown any unique circumstances or unique difficulties that required legal services to prepare and file a standard application for approval of the employment.

Because the Court has concluded that the Trustee's law firm is not entitled to any compensation, it is not entitled to compensation for preparing the unsuccessful application for fees.

It is arguable that the law firm should be entitled to compensation for preparing its application for reimbursement of expenses, which the Court is allowing.  Notice and hearing is

---

communications related to what payments the Debtor would make to the estate to retain the residence in lieu of conversion.  Nothing indicates that the settlement involved consideration of the merits of the conversion motion.  Indeed, it would not be possible to settle a conversion motion other than by one side or the other agreeing to surrender.  As Section III(B) explains, negotiation with regard to disposition of an estate asset is a trustee duty absent unique difficulties.

As another example, the Court would have to consider whether it is appropriate for the law firm to charge the estate $ 57.50 for the six minutes the Trustee spent on May 26 reviewing the conversion order that he prepared.

Determination of the allowable amount for compensable services would also require the Court to determine the appropriate hourly rate for the Trustee's time, an issue the Court raised in its August 19 Order.

not required for a request for compensation and reimbursement of expenses in the amount of $ 1,000 or less, Bankruptcy Rule 2002(a)(6), but an application must be filed.

In this case, however, all of the expenses appear to be expenses that are properly classified as trustee expenses. In this circumstance, it is appropriate to expect the Trustee to apply for reimbursement of expenses in his capacity as trustee.[90]

## E. Denial of Compensation for the Trustee's Law Firm

In summary, the Trustee's law firm is not entitled to compensation for services that were trustee work, the services in opposing conversion were neither necessary nor beneficial, and it is not entitled to fees for seeking compensation that is not allowed. The Court, therefore, need not consider the concerns it stated in its August 19 Order about whether the hourly rates the law firm charged are appropriate in this case.[91]

---

[90] In view of this ruling, the Court need not consider other issues concerning the amount of compensation requested in filing the fee application that the Court raised in its August 19 Order.

This District's procedures permit allowance of compensation after notice without a hearing. General Order 24-2018. The Trustee's law firm, however, charged $ 1,150 for two hours of the Trustee's time that he estimated would be required to prepare for and attend the hearing. Time entry on law firm's invoice 5/27/20, [56] at 14. Preparation for and attendance at the hearing is unnecessary in the absence of an objection. Services for defending a fee application by responding to an objection are not compensable. *Baker Botts L.L.P. v. Asarco LLC,* 576 U.S. 2158 (2015). The Court questioned whether these fees would be allowable.

The charges for the fee application of $ 3,202 represent almost 25 percent of the total compensation requested of $ 13,302, which includes the charges for the fee application. The charges are over 30 percent of the $ 10,102 requested for actual services. The Court questioned whether these charges, given the amount requested, reflected the exercise of reasonable billing judgment.

[91] In the August 19 Order, the Court specifically expressed its concern that allowance of compensation under § 330(a)(1) based on the hourly rates the law firm requests may not be appropriate. August 19 Order, [66] at 10.

The Court did not question the fact that the rates are "the normal and customary rates that the law firm charges and that they are commensurate with the skill, expertise, and reputation of the attorney and the law firm." *Id.* at 9. Rather, the Court stated, its concern was that a $ 575 hourly rate for the Trustee's work as an attorney might not be appropriate for some services in a routine chapter 7 case. The Court noted that, as Appendix A attached to the August 19 Order and to this one show, most hourly rates for lawyers in other firms representing chapter 7 trustees

## IV.  Compensation of the Trustee

Section 330(a)(7) states, "In determining the amount of reasonable compensation to be

awarded to a trustee, the court shall treat such compensation as a commission, based on section

326."  Section 326(a) provides a commission schedule for compensation of a chapter 7 trustee

---

in this District are in the $ 300 to $ 400 range.  *Id.* at 9-10.  Appendix D attached to the August
19 Order and to this one shows a similar range for the hourly rates of most other panel trustees
who employed their own law firm, based on applications filed in January and February 2020.

As the Trustee correctly pointed out at the Hearing, other chapter 7 trustees often employ
his firm to provide services based on his law firm's hourly rates, including his.  The market, he
contends, has thus validated the reasonableness of his hourly rate.

The Trustee also pointed out that others in the bankruptcy community recognize the
excellence of his work, that he is thorough and discovers more assets and claims of the estate
than other trustees, and that he is often called on to teach other trustees.  In particular, he called
the Court's attention to his accomplishments in identifying avoidance actions based on
defectively attested mortgages, identifying claims under Racketeering and Corrupt Organization
statutes, and extending the reach-back period for the recovery of fraudulent transfers based on
the existence of governmental claims.

But this case involves none of those issues.  It was a routine chapter 7 case that would
have involved sale of the residence and distribution of the net proceeds to pay the claims in full
and to return the surplus to the Debtor, all of which could have been accomplished by a trustee
without legal representation.

The Court does not accept the proposition that a lawyer or other professional is
automatically entitled to compensation at the lawyer's standard hourly rate regardless of the
nature and complexity of the matters the lawyer is handling.   The court in *Johnson v. Georgia
Highway Express, Inc.,* 488 F.2d 714, 717 (5th Cir. 1974), recognized this principle in the context
of distinguishing between clerical and legal work:

> It is appropriate to distinguish between legal work, in the strict sense, and investigation,
> clerical work, compilation of facts and statistics and other work which can often be
> accomplished by non-lawyers but which a lawyer may do because he has no other help
> available. Such non-legal work may command a lesser rate. Its dollar value is not
> enhanced just because a lawyer does it.

Similarly, legal work involved in handling routine legal matters in a consumer
bankruptcy case does not automatically command a higher rate because an expert in more
complex matters does it.

based upon "all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims."

In this case, the Trustee made no disbursement other than the Debtor's $ 1,624 federal tax refund he sent to the Chapter 13 Trustee pursuant to the conversion order. [48] at 2. The Court assumes, without deciding, that § 326(a) provides for compensation based on this disbursement.[92] The Court concludes, therefore, that the Trustee is entitled to compensation of $ 406 under § 330(a)(7) as a commission based on § 326(a).

The Trustee contends that he is entitled to additional compensation for the services he rendered on a *quantum meruit* theory, which permits compensation of a chapter 7 trustee in a

---

[92] *See In re Philips,* 507 B.R. 2 (Bankr. N. D. Ga. 2014) (Sacca, J.). The *Philips* court concluded that § 326(a) permits compensation to a chapter 7 trustee in a converted case based on the disbursement of money to the chapter 13 trustee. *Id.* at 7. The *Philips* court also considered the applicability of § 326(c), which deals with compensation of multiple trustees in a case, and ruled that reasonable compensation for the chapter 7 trustee required a deduction for fees the chapter 13 trustee would receive based on disbursement of funds under a plan in the chapter 13 case. *Id.* at 7-8.

In view of the nominal amount of the Trustee's fee in this case, the Court for purposes of this case accepts the *Philips* conclusion that § 326(a) applies to the disbursement to the Chapter 13 Trustee but declines to consider whether § 326(c) requires or justifies a reduction in the fee by any potential fee of the Chapter 13 Trustee.

53

converted case without regard to disbursements by the trustee.[93]  Cases in this District[94] and

others[95] have recognized the availability of compensation on this basis. Other courts reject it.[96]

---

[93]  Application ¶¶ 10-12, [56] at 3-4.  The Trustee also cites *In re Bartlett*, 590 B.R. 175 (Bankr. D. Mass. 2018), which adopted another theory to support allowance of compensation to a chapter 7 trustee in a converted case when the trustee has made no disbursements.

The *Bartlett* court concluded that, under a literal reading of § 326(a), it applies only in "a case under chapter 7 or 11" and that, therefore, it did not provide the basis for compensation in the converted case under chapter 13.  Instead, the *Bartlett* court reasoned, § 330(a) alone governs a chapter 7 trustee's compensation in a converted case and permits the allowance of reasonable compensation to the chapter 7 trustee.

*Bartlett* cites *In re Colburn,* 231 B.R. 778 (Bankr. D. Or. 1999), and *In re Scott,* 2006 WL 566441 at *2 n. 1 (Bankr. N.D. Ill. 2006), which agrees with *Colburn,* to support this proposition.  The *Colburn* court concluded that § 326(a) "limits compensation to trustees in Chapter 7 or 11 cases where funds in fact have been distributed to parties in interest other than the debtor. However, the terms of §  326(a) do not address the circumstances of Chapter 7 cases where assets have been found, that convert to Chapter 13 before assets are liquidated and disbursed."  231 B.R. at 782.

Other courts have rejected the *Colburn* interpretation of § 326(a), concluding that its plain meaning precludes compensation to a chapter 7 trustee in a converted case when the trustee has made no disbursements.  *In re Mingledorff,* 2015 WL 3897374 at *7 (Bankr. S.D. Ga. 2015); *In re Giger,* 504 B.R. 286 (Bankr. D. Maine. 2014); *In re Silvus,* 329 B.R. 193 (Bankr. E.D. Va. 2005); *In re Murphy,* 272 B.R. 483 (Bankr. D. Col. 2002).

The Court concludes that the provisions of § 326(a) continue to apply in a case converted to chapter 13.  The addition of paragraph (7) to § 330(a) by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 removes any doubt about this.  Section 330(a)(7) expressly provides that, in determining reasonable compensation of a chapter 7 trustee under § 330(a), the court shall treat the compensation as a commission based on § 326.  If the trustee disburses no money, there can be no commission.

[94] *In re Conkle,* Case No. 04-66229, Doc. No. 36 (Bankr. N.D. Ga. 2005) (Drake, J.); *In re Wells,* 87 B.R. 732, 736 n. 3 (Bankr. N.D. Ga. 1988) (Cotton, J.); *see In re Roberts,* 80 B.R. 565 (Bankr. N.D. Ga. 1988)  (Cotton, J.) (dicta).

[95] *E.g.*, *In re Pivinski,* 366 B.R. 285 (Bankr. D. Del. 2007); *In re Rodriguez*, 240 B.R. 912, 914 (Bankr. D. Colo. 1999) (awarding compensation on quantum meruit principle where before the debtor converted case to Chapter 13 the Chapter 7 trustee had investigated debtor's failure to keep financial records, and filed an adversary proceeding to deny debtor's discharge);  *In re Moore,* 235 B.R. 414, 416–17 (Bankr. W.D. Ky. 1999), *aff'd sub nom. Schilling v. Moore*, 286 B.R. 846 (W.D. Ky. 2002) ("[T]he chapter 7 trustee should be compensated on a quantum meruit basis in a case that is not fully administered, through no fault of the trustee, where the trustee performs substantial services that result in discovery of assets for the benefit of creditors" but such an award is on a case by case basis and "the burden is on the trustee to establish entitlement to the fee through a detailed description of the services provided. The application should demonstrate a nexus between the trustee's efforts and the uncovering of assets."); *In re*

None of the cases cited by the Trustee to support the *quantum meruit* theory considered

amendments that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 to add

§ 330(a)(7) and § 1326(b)(3) that arguably preclude use of the *quantum meruit* theory.[97]

---

*Washington*, 232 B.R. 814, 816 (Bankr. S.D. Fla. 1999); *In re Berry*, 166 B.R. 932 (Bankr. D. Or. 1994); *In re Pray*, 37 B.R. 27, 29 (Bankr. M.D. Fla. 1983).

[96] *E.g., In re Weibel, Inc.*, 176 B.R. 209, 212 (B.A.P. 9th Cir. 1994) (Regarding compensation of chapter 11 professionals, "Compensation to professionals acting on behalf of the estate must be based on provisions of the Code. The Code does not provide for fee awards based on state law theories such as *quantum meruit*."); *In re Brayan*, 602 B.R. 350, 351 (Bankr. E.D. Mich. 2019) ("[U]nder the plain language of 11 U.S.C. § 326(a), a Chapter 7 trustee is not entitled to any compensation, when a Chapter 7 case is converted to Chapter 13 with the Chapter 7 trustee having made no disbursements."); *In re Silvus*, 329 B.R. 193 (Bankr. E.D. Va. 2005) (Plain meaning rule precludes compensation to chapter 7 trustee who did not make disbursements prior to conversion to chapter 13); *In re Murphy*, 272 B.R. 483, 485 (Bankr. D. Colo. 2002) ("Notwithstanding what might otherwise qualify as 'reasonable compensation' for a trustee under section 330(a), Chapter 7 trustee's fees are limited by the plain language of section 326(a) to a percentage of moneys Chapter 7 trustees disburse, even in cases that convert to Chapter 13."); *In re Fischer*, 210 B.R. 467 (Bankr. D. Minn. 1997). *See In re Celano*, 2001 WL 1586778 (E.D. La. 2001), *aff'd on other grounds*, 54 Fed. Appx. 591 (5th Cir. 2002) ("[T]he Court finds that the plain meaning of section 326(a) does not allow a Chapter 7 trustee to be compensated based on moneys distributed after the case is converted to a Chapter 11 and the trustee has been removed.").

[97] The cases in this District, *supra* note 94, and all of the cases the Trustee cites (Application ¶¶ 10-12, [56] at 3-4) were decided under the law prior to enactment of the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA"), except two, *In re Robb,* 534 B.R. 354 (B.A.P. 8th Cir. 2015) and *In re Bartlett,* 590 B.R. 175 (Bankr. D. Mass. 2018). Neither *Bartlett* nor *Robb* holds that a trustee may receive compensation on a *quantum meruit* basis.

BAPCA added paragraph (7) to 11 U.S.C. § 330(a). It states, "In determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326."

The amendment raises the question whether enactment of a specific requirement for determination of "reasonable compensation" based on a commission excludes allowance of compensation on a *quantum meruit* theory.

BAPCPA also added § 1326(b)(3). It requires payment of a chapter 7 trustee's compensation if the trustee "has been allowed compensation due to the conversion or dismissal of the debtor's prior case pursuant to section 707(b), and some portion of that compensation remains unpaid in a case converted to [chapter 13] or in the case dismissed under section 707(b) and refiled under [chapter 13]. . . ."

The question is whether this provision for payment of a chapter 7 trustee's compensation in a case converted under § 707(b) for abuse states the only circumstances under which a chapter 7 trustee's compensation is payable in a case converted to chapter 13. If so, *quantum meruit* provides no basis for compensation.

Under the *quantum meruit* theory, a chapter 7 trustee is entitled to allowance of compensation upon conversion of a case to chapter 13 even in the absence of any disbursements when the trustee has provided "substantial services" of benefit to the estate.  *See, e.g., In re Stroud,* 2018 WL 3533347 at * 3-4 (Bankr. N.D. Ga. 2018) (Hagenau, C.J.), *aff'd in part, rev'd in part on other issues*, Civ. Action No. 1:18-CV-3755, Doc. No. 12 (N.D. Ga. Jan. 29, 2018).

The Trustee rendered services in the diligent performance of his statutory duties, for which he seeks $ 1,485.20.  In addition, the law firm did trustee work, as Sections III(A) and (B) discuss.  The total requested for all of these services is $4,484.70.[98]  After deduction of the allowed statutory commission of $ 406.00, the remaining amount for trustee work is $ 4,078.70.

The trustee work in this case was the performance of the normal duties of a trustee in a chapter 7 case during the limited period of time before the filing of the motion to convert.  As Section III(C) explains, the filing of the conversion motion came before any substantive activity in the case occurred and should have ended the Trustee's work.

Nothing in the case was difficult or unique.  The Trustee did not discover undisclosed assets or claims of the estate for fraudulent or other avoidable transfers.  The Trustee did not devote extensive time over an extended period prosecuting claims of the estate or dealing with problems in the liquidation of assets before the filing of the conversion motion.  The Debtor caused no problems in the administration of the case.

---

The *Robb* court dismissed, for lack of standing, the debtor's appeal from the bankruptcy court ruling allowing *quantum meruit*.  *Bartlett* noted a conflict among lower courts on the availability of *quantum meruit* to permit compensation to a chapter 7 trustee who made no disbursements in a chapter 7 case converted to chapter 13, but awarded compensation on a different ground, which the Court discusses and rejects in note 93.

[98] $ 4484.70 is the sum of $ 1,615.00 for the law firm's trustee work (Section III(A), $ 1384.50 for its work on the sale of real estate (Section III(B), and $1,485.20 for the Trustee's services.

Application of a principle like *quantum meruit* that has no specific statutory basis (and is arguably contrary to express provisions of the Bankruptcy Code) should be reserved for extraordinary or unique situations. This case was a routine one.

Accordingly, the Court concludes that, even if *quantum meruit* is a permissible basis for allowance of compensation for chapter 7 trustee's services in the absence of disbursements, the circumstances of this case do not justify its application here.[99] The Court concludes that compensation for the Trustee in the amount of $ 406, representing the statutory commission of the tax refund disbursed to the Chapter 13 Trustee, is appropriate.

## V. Conclusion

The Trustee's law firm is not entitled to any compensation because the services it provided either constituted trustee work or, in the case of opposition to the motion to convert, were neither necessary nor beneficial to the estate. The Trustee is entitled to compensation of only $ 406.

In considering these issues, this judge has been mindful of the need, in a multi-judge court, for consistency in determining recurring issues such as those relating to compensation of panel trustees and their law firms. This judge cannot speak for other judges or bind them to any conclusions of law in this Order. Moreover, the application of most of them in any given case requires careful review of the particular facts and circumstances of the case.

This judge is satisfied, however, that this Order is consistent with the views of the other judges in this District in that fees should not be awarded for services provided by law firms that

---

[99] *See, e.g., In re Stroud,* 2018 WL 3533347, at *4 (Bankr. N.D. Ga. 2018) (Hagenau, C.J.), *aff'd in part, rev'd in part, and remanded on other issues,* Civ. Action No. 1:18-CV-3755, Doc. No. 12 (N.D. Ga. Jan. 29, 2018), *on remand,* Case No. 15-74063, Doc. No. 158 (Bankr. N.D. Ga. May 3, 2019).

57

could and should be performed by the trustee, nor should fees be awarded for contesting conversion to chapter 13 when such opposition is neither beneficial nor necessary for the protection of creditors.

Based on, and in accordance with, the foregoing, it is hereby **ORDERED and ADJUDGED** that the Application is denied in part and granted in part as follows:

1. The Trustee is awarded compensation in the amount of $ 406.00 and reimbursement of expenses of 30 cents. All other requested compensation is disallowed.

2. The Trustee's law firm is awarded reimbursement of expenses in the amount of $ 210.50. All of the law firm's requested compensation is disallowed.

3. The amounts awarded are allowed as administrative expense priority claims in this case pursuant to § 503(b)(2).

4. This Order shall constitute the allowance of Proof of Claim 13, filed by the Trustee and his law firm, in the amount of $ 616.80 as an administrative expense.

[End of Order]

## APPENDIX A

## List of Applications for Compensation Filed by Lawyers for Chapter 7 Trustees Filed in January and February 2020

| Case No. | Trustee | App. Date | Doc. # | Professional/Firm | Attorney Rates | | Paralegal Rates | |
|---|---|---|---|---|---|---|---|---|
| | | | | | Low | High | Low | High |
| 19-57057-lrc | Hays | 2/24/2020 | 45 | Arnall, Golden & Gregory, LLP | $445.00 | $575.00 | $170.00 | $195.00 |
| 19-66654-jwc | Hays | 2/19/2020 | 18 | Arnall, Golden & Gregory, LLP | $445.00 | $575.00 | $185.00 | $210.00 |
| 19-68140-sms | Gordon | 2/17/2020 | 21 | Arnall, Golden & Gregory, LLP | $445.00 | $575.00 | $170.00 | $210.00 |
| 19-68176-pmb | Gordon | 2/5/2020 | 15 | Arnall, Golden & Gregory, LLP | $445.00 | $575.00 | $170.00 | $210.00 |
| 19-69051-bem | Gordon | 2/17/2020 | 11 | Arnall, Golden & Gregory, LLP | $445.00 | $575.00 | $170.00 | $210.00 |
| 19-69099-wlh | Gordon | 2/17/2020 | 29 | Arnall, Golden & Gregory, LLP | $445.00 | $575.00 | $170.00 | $210.00 |
| 19-69133-lrc | Bargar | 2/14/2020 | 22 | Arnall, Golden & Gregory, LLP | $445.00 | $575.00 | $170.00 | $210.00 |
| 19-69300-jwc | Bargar | 2/13/2020 | 19 | Arnall, Golden & Gregory, LLP | $445.00 | $575.00 | $170.00 | $210.00 |
| 19-70695-pwb | Gordon | 2/3/2020 | 12 | Arnall, Golden & Gregory, LLP | $445.00 | $575.00 | $170.00 | $210.00 |
| 19-70697-jwc | Gordon | 2/18/2020 | 12 | Arnall, Golden & Gregory, LLP | $435.00 | $575.00 | $170.00 | $210.00 |
| 19-70711-wlh | Gordon | 2/17/2020 | 21 | Arnall, Golden & Gregory, LLP | $445.00 | $575.00 | $170.00 | $210.00 |
| 19-70714-pmb | Gordon | 2/10/2020 | 19 | Arnall, Golden & Gregory, LLP | $435.00 | $575.00 | $170.00 | $210.00 |
| 19-57751-jwc | Hays | 1/17/2020 | 25 | Arnall, Golden & Gregory, LLP | $445.00 | $570.00 | $170.00 | $195.00 |
| 19-61728-lrc | Hays | 1/17/2020 | 25 | Arnall, Golden & Gregory, LLP | $445.00 | $570.00 | $170.00 | $195.00 |
| 19-65388-pwb | Hays | 1/31/2020 | 19 | Arnall, Golden & Gregory, LLP | $445.00 | $570.00 | $170.00 | $195.00 |
| 19-66306-sms | Bargar | 1/21/2020 | 21 | Arnall, Golden & Gregory, LLP | $445.00 | $570.00 | $170.00 | $195.00 |
| 19-67190-jwc | Bargar | 1/16/2020 | 13 | Arnall, Golden & Gregory, LLP | $445.00 | $570.00 | $170.00 | $195.00 |
| 19-67191-pwb | Bargar | 1/22/2020 | 18 | Arnall, Golden & Gregory, LLP | $445.00 | $570.00 | $170.00 | $195.00 |
| 19-67260-lrc | Trauner | 1/22/2020 | 19 | Arnall, Golden & Gregory, LLP | $445.00 | $570.00 | $170.00 | $195.00 |
| 19-67939-jrs | Bargar | 1/22/2020 | 13 | Arnall, Golden & Gregory, LLP | $445.00 | $570.00 | $170.00 | $195.00 |
| 19-68348-pwb | Bargar | 1/16/2020 | 23 | Arnall, Golden & Gregory, LLP | $445.00 | $570.00 | $170.00 | $195.00 |
| 19-68560-wlh | Gordon | 1/24/2020 | 31 | Arnall, Golden & Gregory, LLP | $445.00 | $570.00 | $170.00 | $205.00 |
| 19-68798-jwc | Trauner | 1/22/2020 | 15 | Arnall, Golden & Gregory, LLP | $445.00 | $570.00 | $170.00 | $290.00 |
| 19-69032-sms | Gordon | 1/10/2020 | 17 | Arnall, Golden & Gregory, LLP | $430.00 | $570.00 | $170.00 | $205.00 |
| 19-69106-lrc | Gordon | 1/10/2020 | 13 | Arnall, Golden & Gregory, LLP | $435.00 | $570.00 | $170.00 | $205.00 |
| 19-69134-sms | Gordon | 1/10/2020 | 19 | Arnall, Golden & Gregory, LLP | $435.00 | $570.00 | $170.00 | $205.00 |
| 19-69352-lrc | Bargar | 1/14/2020 | 13 | Arnall, Golden & Gregory, LLP | $445.00 | $570.00 | $170.00 | $195.00 |
| 19-70307-bem | Hays | 2/10/2020 | 16 | Arnall, Golden & Gregory, LLP | $445.00 | $570.00 | $170.00 | $195.00 |
| 19-70322-lrc | Hays | 2/18/2020 | 8 | Arnall, Golden & Gregory, LLP | $445.00 | $570.00 | $170.00 | $195.00 |
| 18-66700-wlh | Ogier | 1/28/2020 | 28 | Ogier, Rothschild, & Rosenfeld, PC | $300.00 | $535.00 | $115.00 | $200.00 |
| 17-66951--pwb | Cooper | 2/18/2020 | 52 | Ogier, Rothschild, & Rosenfeld, PC | $300.00 | $525.00 | $115.00 | $200.00 |
| 19-55352-jwc | Steil | 2/7/2020 | 23 | Ogier, Rothschild, & Rosenfeld, PC | $300.00 | $525.00 | $115.00 | $200.00 |
| 19-55535-pmb | Cooper | 2/28/2020 | 27 | Ogier, Rothschild, & Rosenfeld, PC | $300.00 | $525.00 | $115.00 | $200.00 |
| 19-55850-jwc | Ogier | 1/31/2020 | 41 | Ogier, Rothschild, & Rosenfeld, PC | $300.00 | $525.00 | $115.00 | $200.00 |
| 19-57090-jwc | Ogier | 2/14/2020 | 44 | Ogier, Rothschild, & Rosenfeld, PC | $300.00 | $525.00 | $115.00 | $200.00 |

| 19-59731-sms | Ogier | 1/21/2020 | 19 | Ogier, Rothschild, & Rosenfeld, PC | $300.00 | $525.00 | $115.00 | $200.00 |
| 19-61407-jwc | Steil | 1/14/2020 | 36 | Ogier, Rothschild, & Rosenfeld, PC | $300.00 | $525.00 | $115.00 | $200.00 |
| 19-62384-jwc | Ogier | 2/24/2020 | 16 | Ogier, Rothschild, & Rosenfeld, PC | $300.00 | $525.00 | $115.00 | $200.00 |
| 19-64011-jwc | Steil | 1/6/2020 | 24 | Ogier, Rothschild, & Rosenfeld, PC | $300.00 | $525.00 | $115.00 | $200.00 |
| 19-64957-wlh | Steil | 1/28/2020 | 29 | Ogier, Rothschild, & Rosenfeld, PC | $300.00 | $525.00 | $115.00 | $200.00 |
| 19-65891-lrc | Ogier | 2/7/2020 | 24 | Ogier, Rothschild, & Rosenfeld, PC | $300.00 | $525.00 | $115.00 | $200.00 |
| 19-66708-jwc | Ogier | 1/21/2020 | 18 | Ogier, Rothschild, & Rosenfeld, PC | $300.00 | $525.00 | $115.00 | $200.00 |
| 19-66959-lrc | Ogier | 2/4/2020 | 42 | Ogier, Rothschild, & Rosenfeld, PC | $300.00 | $525.00 | $115.00 | $200.00 |
| 19-67393-sms | Ogier | 1/31/2020 | 10 | Ogier, Rothschild, & Rosenfeld, PC | $400.00 | $525.00 | $115.00 | $200.00 |
| 19-70242-wlh | Steil | 2/21/2020 | 20 | Ogier, Rothschild, & Rosenfeld, PC | $300.00 | $525.00 | $115.00 | $200.00 |
| 20-60160-pwb | Ogier | 2/19/2020 | 12 | Ogier, Rothschild, & Rosenfeld, PC | $300.00 | $525.00 | $115.00 | $200.00 |
| 20-62775-jwc | Ogier | 2/24/2020 | 7 | Ogier, Rothschild, & Rosenfeld, PC | $300.00 | $525.00 | $115.00 | $200.00 |
| 19-65378-wlh | Lubin | 1/3/2020 | 14 | Lamberth, Cifelli, Ellis & Nason, PA | $200.00 | $495.00 | $75.00 | $195.00 |
| 19-65892-sms | Lubin | 1/3/2020 | 12 | Lamberth, Cifelli, Ellis & Nason, PA | $200.00 | $495.00 | $75.00 | $195.00 |
| 19-67264-sms | Lubin | 2/12/2020 | 10 | Lamberth, Cifelli, Ellis & Nason, PA | $200.00 | $495.00 | $75.00 | $195.00 |
| 19-69764-sms | Lubin | 2/24/2020 | 18 | Lamberth, Cifelli, Ellis & Nason, PA | $200.00 | $495.00 | $75.00 | $195.00 |
| 16-72589-bem | Cooper | 2/7/2020 | 53 | Macey, Wilensky & Hennings | $450.00 | $450.00 | N/A | N/A |
| 19-64623-lrc | Goodman | 1/23/2020 | 42 | Goodman & Goodman, PC | $425.00 | $425.00 | $85.00 | $85.00 |
| 19-22223-jrs | Nasuti | 1/15/2020 | 13 | Thompson, O'Brien, Kemp & Nasuti | $325.00 | $425.00 | $195.00 | $195.00 |
| 19-22263-jrs | Nasuti | 1/20/2020 | 15 | Thompson, O'Brien, Kemp & Nasuti | $325.00 | $425.00 | $125.00 | $185.00 |
| 18-22005-jrs | Nappier | 2/20/2020 | 88 | Ragsdale, Beals, Seigler & Patterson & Gray, LLP | $265.00 | $400.00 | $135.00 | $135.00 |
| 18-70522-wlh | Palmer | 1/31/2020 | 13 | Ragsdale, Beals, Seigler & Patterson & Gray, LLP | $265.00 | $400.00 | $135.00 | $135.00 |
| 19-54495-lrc | Palmer | 1/23/2020 | 31 | Ragsdale, Beals, Seigler & Patterson & Gray, LLP | $265.00 | $400.00 | $135.00 | $135.00 |
| 19-62845-pwb | Lubin | 1/8/2020 | 29 | Ragsdale, Beals, Seigler & Patterson & Gray, LLP | $265.00 | $400.00 | $135.00 | $135.00 |
| 19-68241-sms | Palmer | 1/24/2020 | 47 | Ragsdale, Beals, Seigler & Patterson & Gray, LLP | $265.00 | $400.00 | $135.00 | $135.00 |
| 19-68761-lrc | Palmer | 1/7/2020 | 12 | Ragsdale, Beals, Seigler & Patterson & Gray, LLP | $265.00 | $400.00 | $135.00 | $135.00 |
| 19-69023-jwc | Palmer | 1/23/2020 | 16 | Ragsdale, Beals, Seigler & Patterson & Gray, LLP | $265.00 | $400.00 | $135.00 | $135.00 |
| 19-69637-bem | Trauner | 1/24/2020 | 17 | Ragsdale, Beals, Seigler & Patterson & Gray, LLP | $265.00 | $400.00 | $135.00 | $135.00 |
| 20-60349-jrs | Scarver | 1/31/2020 | 17 | Ragsdale, Beals, Seigler & Patterson & Gray, LLP | $265.00 | $400.00 | $135.00 | $135.00 |
| 19-22289-jrs | Nappier | 1/13/2020 | 13 | Betty A. Nappier | $395.00 | $395.00 | N/A | N/A |
| 19-22320-jrs | Nappier | 1/9/2020 | 16 | Betty A. Nappier | $395.00 | $395.00 | N/A | N/A |
| 19-22329-jrs | Nappier | 1/13/2020 | 17 | Betty A. Nappier | $395.00 | $395.00 | N/A | N/A |
| 20-21059-jrs | Nappier | 1/13/2020 | 17 | Betty A. Nappier | $395.00 | $395.00 | N/A | N/A |
| 19-69506-pwb | Miller | 1/27/2020 | 17 | Martha Miller Law, LLC | $395.00 | $395.00 | $125.00 | $125.00 |
| 19-12370-pwb | Mann | 2/26/2020 | 23 | Mann & Wooldridge, PC | $375.00 | $375.00 | N/A | N/A |
| 19-53144-sms | Pettie | 2/18/2020 | 46 | Jason L. Pettie, PC | $360.00 | $360.00 | N/A | N/A |
| 19-66775-sms | Pettie | 2/24/2020 | 24 | Jason L. Pettie, PC | $360.00 | $360.00 | N/A | N/A |
| 19-67488-pmb | Pettie | 2/18/2020 | 19 | Jason L. Pettie, PC | $360.00 | $360.00 | N/A | N/A |
| 19-12283-whd | Baker | 1/24/2020 | 18 | James G. Baker, PC | $350.00 | $350.00 | N/A | N/A |

| 19-12412-whd | Baker | 2/10/2020 | 21 | James G. Baker, PC | $350.00 | $350.00 | N/A | N/A |
|---|---|---|---|---|---|---|---|---|
| 19-10853-whd | Mann | 2/17/2020 | 17 | Mann & Wooldridge, PC | $350.00 | $350.00 | N/A | N/A |
| 19-10855-whd | Mann | 2/17/2020 | 20 | Mann & Wooldridge, PC | $350.00 | $350.00 | N/A | N/A |
| 19-11887-whd | Mann | 1/23/2020 | 12 | Mann & Wooldridge, PC | $350.00 | $350.00 | N/A | N/A |
| 19-12320-whd | Mann | 2/28/2020 | 12 | Mann & Wooldridge, PC | $350.00 | $350.00 | N/A | N/A |
| 18-53536-pwb | Layng | 2/27/2020 | 30 | William J. Layng, Jr., PC | $350.00 | $350.00 | $100.00 | $100.00 |
| 19-62425-sms | Layng | 1/16/2020 | 34 | William J. Layng, Jr., PC | $350.00 | $350.00 | $100.00 | $100.00 |
| 19-63674-bem | Layng | 2/25/2020 | 34 | William J. Layng, Jr., PC | $350.00 | $350.00 | $100.00 | $100.00 |
| 19-64537-lrc | Layng | 2/11/2020 | 30 | William J. Layng, Jr., PC | $350.00 | $350.00 | $100.00 | $100.00 |
| 18-42985-pwb | Richardson | 2/12/2020 | 23 | Brinson, Berry, Askew, Seigler, Richardson, Davis, LLP | $235.00 | $325.00 | $100.00 | $100.00 |
| 19-42062-pwb | Richardson | 1/2/2020 | 14 | Brinson, Berry, Askew, Seigler, Richardson, Davis, LLP | $235.00 | $325.00 | $100.00 | $100.00 |
| 19-42201-bem | Richardson | 1/31/2020 | 18 | Brinson, Berry, Askew, Seigler, Richardson, Davis, LLP | $235.00 | $325.00 | $100.00 | $100.00 |
| 19-42464-pwb | Richardson | 2/5/2020 | 19 | Brinson, Berry, Askew, Seigler, Richardson, Davis, LLP | $235.00 | $325.00 | $100.00 | $100.00 |
| 19-42862-bem | Richardson | 2/21/2020 | 12 | Brinson, Berry, Askew, Seigler, Richardson, Davis, LLP | $235.00 | $325.00 | $100.00 | $100.00 |
| 19-42863-bem | Richardson | 2/21/2020 | 11 | Brinson, Berry, Askew, Seigler, Richardson, Davis, LLP | $235.00 | $325.00 | $100.00 | $100.00 |
| 19-42864-pwb | Richardson | 2/5/2020 | 10 | Brinson, Berry, Askew, Seigler, Richardson, Davis, LLP | $235.00 | $325.00 | $100.00 | $100.00 |
| 16-10862-whd | Howell | 1/16/2020 | 70 | Griffin E. Howell III & Assoc. | $305.00 | $305.00 | N/A | N/A |
| 16-11161-whd | Howell | 1/15/2020 | 33 | Griffin E. Howell III & Assoc. | $305.00 | $305.00 | N/A | N/A |
| 18-11283-whd | Howell | 2/13/2020 | 56 | Griffin E. Howell III & Assoc. | $305.00 | $305.00 | N/A | N/A |
| 19-12033-whd | Howell | 1/14/2020 | 22 | Griffin E. Howell III & Assoc. | $305.00 | $305.00 | N/A | N/A |
| 19-12062-whd | Howell | 1/14/2020 | 11 | Griffin E. Howell III & Assoc. | $305.00 | $305.00 | N/A | N/A |
| 19-12063-whd | Howell | 1/14/2020 | 10 | Griffin E. Howell III & Assoc. | $305.00 | $305.00 | N/A | N/A |
| 19-12142-whd | Howell | 2/13/2020 | 22 | Griffin E. Howell III & Assoc. | $305.00 | $305.00 | N/A | N/A |
| 19-12170-whd | Howell | 2/13/2020 | 36 | Griffin E. Howell III & Assoc. | $305.00 | $305.00 | N/A | N/A |
| 19-10148-whd | Baker | 2/12/2020 | 44 | James G. Baker, PC | $295.00 | $295.00 | N/A | N/A |
| 18-20231-jrs | Patten | 1/28/2020 | 26 | Smith, Gilliam, Williams & Miles | $290.00 | $290.00 | N/A | N/A |
| 18-20477-jrs | Patten | 1/2/2020 | 13 | Smith, Gilliam, Williams & Miles | $290.00 | $290.00 | N/A | N/A |

**APPENDIX B**

**Categorization of Services Rendered by Attorneys for Trustee**
(Descriptions of services are on the law firm's invoice
attached as Exhibit A2 to the Application. [56] at 11-14)

**Trustee Duties**

| Timekeeper | Date | Hours | Rate | Hours x Rate |
|---|---|---|---|---|
| CAS | 12/2/2019 | 1.0 | $160 | $160.00 |
| NCG | 12/3/2019 | 1.2 | $570 | $684.00 |
| PEB | 12/6/2019 | 0.3 | $215 | $64.50 |
| PEB | 12/6/2019 | 0.9 | $215 | $193.50 |
| PEB | 12/6/2019 | .3 | $215 | $64.50 |
| NCG | 12/9/2019 | 0.9 | $570 | $513.00 |
| Subtotal | | 4.6 | | $1,679.50 |

**Attorney Retention and Compensation**

| Timekeeper | Date | Hours | Rate | Hours x Rate |
|---|---|---|---|---|
| PEB | 12/6/2019 | 0.6 | $215 | $129.00 |
| NCG | 12/9/2019 | 0.3 | $570 | $171.00 |
| AGF | 5/26/2020 | 3.2 | $210 | $672.00 |
| NCG | 5/26/2020 | 0.3 | $575 | $172.50 |
| NCG | 5/27/2020 | 1.7 | $575 | $977.50 |
| NCG | 5/27/2020 | 2.4 | $575 | $1,380.00 |
| Subtotal | | 8.5 | | $3,502.00 |

**Sale of Real Estate**

| Timekeeper | Date | Hours | Rate | Hours x Rate |
|---|---|---|---|---|
| PEB | 1/7/2020 | 2.0 | $225 | $450.00 |
| PEB | 1/7/2020 | 0.8 | $225 | $180.00 |
| NCG | 1/8/2020 | 1.2 | $575 | $690.00 |
| Subtotal | | 4.0 | | $1,320.00 |

62

**Opposition to Conversion**

| Timekeeper | Date | Hours | Rate | Hours x Rate |
|------------|------|-------|------|--------------|
| NCG | 1/23/2020 | 0.9 | $575 | $517.50 |
| PEB | 2/7/2020 | 2.0 | $225 | $450.00 |
| NCG | 2/10/2020 | 1.2 | $575 | $690.00 |
| NCG | 2/12/2020 | 0.5 | $575 | $287.50 |
| PEB | 2/24/2020 | 0.2 | $225 | $45.00 |
| PEB | 2/24/2020 | 0.4 | $225 | $90.00 |
| NCG | 2/24/2020 | 0.8 | $575 | $460.00 |
| NCG | 2/27/2020 | 0.1 | $575 | $57.50 |
| NCG | 3/4/2020 | 0.5 | $575 | $287.50 |
| NCG | 3/6/2020 | 0.2 | $575 | $115.00 |
| NCG | 3/9/2020 | 0.1 | $575 | $57.50 |
| NCG | 4/1/2020 | 1.3 | $575 | $747.50 |
| PEB | 4/2/2020 | 0.4 | $225 | $90.00 |
| PEB | 4/2/2020 | 0.4 | $225 | $90.00 |
| NCG | 4/2/2020 | 1.0 | $575 | $575.00 |
| NCG | 4/6/2020 | 0.1 | $575 | $57.50 |
| NCG | 4/14/2020 | 0.2 | $575 | $115.00 |
| NCG | 4/17/2020 | 0.8 | $575 | $460.00 |
| PEB | 4/20/2020 | 0.6 | $225 | $135.00 |
| NCG | 4/20/2020 | 0.1 | $575 | $57.50 |
| PEB | 5/21/2020 | 0.8 | $225 | $180.00 |
| PEB | 5/21/2020 | 0.9 | $225 | $202.50 |
| NCG | 5/21/2020 | 1.7 | $575 | $977.50 |
| NCG | 5/26/2020 | 0.1 | $575 | $57.50 |
| Subtotal | | 15.3 | | $6,802.50 |

**Totals**

| | Hours | Fees |
|--|-------|------|
| Trustee Duties | 4.3 | $1,679.50 |
| Retention & Compensation | 8.5 | $3,502.00 |
| Sale of Real Estate | 4.3 | $1,320.00 |
| Opposition to Conversion | 15.3 | $6,802.50 |
| Totals | 32.4 | $13,304.00 |

**Corrective Note:** Appendix B attached to the Court's Order entered on August 19, 2020 [66] erroneously: (1) included 1.2 hours of time for NCG in the Opposition to Conversion category when it should have been in the Sale of Real Estate category and .3 hours of NCG time in the Trustee Duties category when it should have been in the Retention and Compensation category; and (2) included .3 hours of time for PEB in the sale of real estate category when it should have been in the Retention and Compensation category. The errors are corrected in this Appendix.

**APPENDIX C**

**Motions to Sell Property Filed by Nonlawyer
Trustee Without Counsel, 2017-2019**

| Case Number | Title | Date Filed | Doc. # | Trustee |
|---|---|---|---|---|
| 15-40543-mgd | Kevin Patrick Massengale | 2/17/2017 | 104 | Montz |
| 16-42853-pwb | Angel Tonya Bharwani | 4/10/2017 | 23 | Montz |
| 17-41051-bem | Mary Ann Snyder | 8/31/2017 | 25 | Montz |
| 17-40804-pwb | Patrick Eugene Baynes and Melissa Ann Baynes | 10/24/2017 | 38 | Montz |
| 18-40384-pwb | Joseph Powell Stewart | 6/26/2018 | 34 | Montz |
| 13-40571-pwb | Richard John Reece | 8/13/2018 | 84 | Montz |
| 16-41059-bem | Timothy Lamar Patterson and Robin Michelle Patterson | 11/5/2018 | 85 | Montz |
| 18-41302-pwb | Paragon Wool, LLC | 11/9/2018 | 38 | Montz |
| 17-40571-pwb | Jeffrey Scott Graham and Melissa Landa Graham | 1/14/2019 | 112 | Montz |
| 18-42745-pwb | John Ross Branch | 4/30/2019 | 28 | Montz |
| 18-42745-pwb | John Ross Branch | 5/8/2019 | 32 | Montz |
| 18-66766-jwc | Beautiful Brows LLC | 7/3/2019 | 154 | Hays |
| 19-41856-pwb | Thomas Edwin Engram | 11/14/2019 | 19 | Montz |
| 19-41856-pwb | Thomas Edwin Engram | 12/2/2019 | 21 | Montz |

**APPENDIX D**

**List of Applications to Employ Trustee's Law Firm
Filed in January and February 2020**

| Case No. | Trustee | Hourly Rate | App. Empl. Date | Doc. # |
|---|---|---|---|---|
| 19-12412-whd | Baker | $350.00 | 2/10/2020 | 21 |
| 19-69352-lrc | Bargar | $445.00 | 1/14/2020 | 13 |
| 19-64623-lrc | Goodman | $425.00 | 1/23/2020 | 42 |
| 19-12170-whd | Howell | $305.00 | 2/13/2020 | 36 |
| 18-53536-pwb | Layng | $350.00 | 2/27/2020 | 30 |
| 19-12370-pwb | Mann | $375.00 | 2/26/2020 | 23 |
| 19-69506-pwb | Miller | $395.00 | 1/27/2020 | 17 |
| 20-21059-jrs | Nappier | $395.00 | 1/13/2020 | 17 |
| 19-22263-jrs | Nasuti | $425.00 | 1/20/2020 | 15 |
| 20-62775-jwc | Ogier | $395-$470 | 2/24/2020 | 7 |
| 18-20477-jrs | Patten | $290.00 | 1/2/2020 | 13 |
| 19-67488-pmb | Pettie | $360.00 | 2/18/2020 | 19 |
| 19-42864-pwb | Richardson | $325.00 | 2/5/2020 | 10 |
| 19-70242-wlh | Steil | $300-$390 | 2/21/2020 | 20 |

APPENDIX E

# Motions to Convert from Chapter 7 to Chapter 13
## January 1, 2019 – August 14, 2020

The report from the Clerk's CM/ECF system for motions during the time period shows 181 motions to convert to chapter 13; this list contains 155 cases.

This listing shows cases, not motions.  Some cases on the report have been omitted, including several where the motion was improperly coded (*e.g.,* a request for conversion from chapter 13 to 7 coded as a motion to convert to chapter 13) or the motion to convert to chapter 13 appeared to be an error (e.g., immediate withdrawal of motion to convert to chapter 13 in a chapter 13 case, followed by request to convert to chapter 7). When the report shows several motions in the same case as separate motions (usually because of the filing of a duplicative motion or an amendment to a pending motion), the case is shown only once in this list.

Appendix E attached to the Court's August 28, 2020 [68] reflected 156 cases.  This list omits a duplicate entry for Case No. 19-20386-jrs that was erroneously included in the earlier list.  The information has been revised to reflect dispositions of pending motions and to correct errors in the original list.

| Case No. | Date of Request to Convert | Doc # | Petition Date | Ch 7 Trustee | Trustee object? | Converted? | Outcome in Chapter 13 case | Fees | |
|---|---|---|---|---|---|---|---|---|---|
| Dates of duplicate and amended motions omitted | | | | | | Y=Yes; N=No; D= Case or motion dismissed W= Withdrawn ------------------------ R= Reconverted; C=Ch. 13 completed; P=Ch. 13 pending; D= Dismissed | | Request | Allowed |
| 15-54467-sms | 6/4/2019 | 85 | 3/9/2015 | Hays | N | Y | P | | |
| 15-56733-pmb | 5/13/2019 | 78 | 4/10/2015 | Scarver | N | W | N/A | | |
| 16-41362-pwb | 5/10/2019 | 47 | 6/10/2016 | Richardson | N | Y | P | | |
| 16-63483-lrc | 10/25/2019 | 59 | 8/2/2016 | Pettie | N | Y | D | | |
| 17-59525-sms | 7/3/2019 | 53 | 6/1/2017 | Cooper | N | Y | P | | |
| 17-60568-bem | 5/5/2019 | 60 | 6/15/2017 | Layng | N | Y | D | | |
| 17-42501-bem | 2/7/2019 | 62 | 10/20/2017 | Montz | N | Y | D | | |
| 17-68491-pmb | 2/18/2019 | 59 | 10/23/2017 | Ogier | N | Y | D | | |
| 17-69339-jwc | 2/28/2019 | 84 | 11/5/2017 | Trauner | N | Y | C | | |
| 17-70000-jrs | 7/3/2019 | 84 | 11/15/2017 | Miller | Y | Y | P | 4,800.00 | 4,800.00 |
| 17-70315-jrs | 3/12/2019 | 86 | 11/21/2017 | Steil | Y | Y | P | 4,432.00 | 4,432.00 |
| 18-10014-whd | 5/4/2020 | 52 | 1/3/2018 | Mann | N | Y | P | 1,562.00 | 1,562.00 |
| 18-20532-jrs | 2/25/2020 | 27 | 3/16/2018 | Patten | N | Y | P | | |

| Case No. | Date of Request to Convert | Doc # | Petition Date | Ch 7 Trustee | Trustee object? | Converted? | Outcome in Chapter 13 case | Fees | |
|---|---|---|---|---|---|---|---|---|---|
| 18-55697-lrc | 2/14/2019 | 154 | 4/3/2018 | Hays | N | N | N/A | | |
| 18-20701-jrs | 2/26/2019 | 23 | 4/4/2018 | Patten | Y | N | N/A | | |
| 18-40896-pwb | 12/11/2019 | 49 | 4/17/2018 | Montz | N | Y | P | | |
| 18-41541-pwb | 11/5/2019 | 48 | 7/3/2018 | Richardson | Y | Y | P | 3,979.00 | 3,979.00 |
| 18-63362-jwc | 3/29/2019 | 37 | 8/8/2018 | Lewis | N | Y | C | | |
| 18-41995-bem | 2/25/2019 | 29 | 8/27/2018 | Richardson | N | Y | P | | |
| 18-64819-wlh | 2/27/2019 | 39 | 9/2/2018 | Gordon | Y | W | N/A | | |
| 18-64948-sms | 2/13/2019 | 32 | 9/4/2018 | Palmer | N | Y | D | | |
| 18-11987-whd | 2/26/2019 | 16 | 9/24/2018 | Mann | N | Y | P | | |
| 18-12101-whd | 4/14/2019 | 31 | 10/6/2018 | Baker | N | Y | D | | |
| 18-67130-bem | 7/25/2019 | 152 | 10/10/2018 | Bargar | Y | N | N/A | | |
| 18-67660-lrc | 2/13/2019 | 32 | 10/19/2018 | Layng | N | Y | P | | |
| 18-68121-sms | 12/13/2019 | 42 | 10/29/2018 | Gordon | N | W | N/A | | |
| 18-68265-sms | 12/20/2019 | 64 | 10/31/2018 | Hays | N | Y | P | 15,209.00 | 15,209.00 |
| 18-42624-bem | 5/7/2019 | 32 | 11/5/2018 | Richardson | N | Y | P | | |
| 18-69100-jwc | 11/27/2019 | 27 | 11/12/2018 | Gordon | Y | Y | P | 22,500.00 | Pending |
| 18-69794-pmb | 3/25/2019 | 35 | 11/27/2018 | Goodman | N | D 707(a) | N/A | | |
| 18-22345-jrs | 7/9/2019 | 28 | 11/29/2018 | Nappier | N | Y | P | | |
| 18-70036-jwc | 3/19/2019 | 33 | 11/30/2018 | Lubin | Y | W | N/A | | |
| 18-70200-pmb | 3/21/2019 | 52 | 12/3/2018 | Scarver | N | Y | D | | |
| 18-70694-lrc | 3/14/2019 | 17 | 12/9/2018 | Cooper | N | W | N/A | | |
| 18-71397-pwb | 2/21/2020 | 46 | 12/21/2018 | Pettie | N | Y | P | | |
| 18-71473-wlh | 1/23/2019 | 21 | 12/26/2018 | Goodman | N | Y | P | | |
| 18-71839-jwc | 1/8/2019 | 15 | 12/31/2018 | Ogier | N | Y | D | | |
| 19-50188-sms | 3/21/2019 | 21 | 1/3/2019 | Gordon | Y | Y | P | 13,885.50 | 13,885.50 |
| 19-50531-jrs | 3/30/2019 | 16 | 1/10/2019 | Goodman | N | Y | P | | |
| 19-20136-jrs | 12/19/2019 | 58 | 1/28/2019 | Nappier | N | Y | P | | |
| 19-40178-pwb | 4/24/2019 | 21 | 1/28/2019 | Richardson | N | Y | P | | |
| 19-51581-jwc | 2/12/2019 | 13 | 1/31/2019 | Ogier | N | D Fee | N/A | | |
| 19-10209-whd | 2/2/2019 | 5 | 2/2/2019 | Baker | N | Y | P | | |
| 19-51992-wlh | 5/21/2019 | 43 | 2/4/2019 | Gordon | N | Y | P | | |
| 19-52799-wlh | 2/20/2019 | 5 | 2/20/2019 | Miller | N | Y | D | | |
| 19-52984-jrs | 9/9/2019 | 60 | 2/25/2019 | Bargar | Y | Y | P | | |
| 19-20386-jrs | 7/19/2019 | 24 | 2/28/2019 | Nappier | N | Y | C | | |
| 19-53419-jwc | 3/16/2019 | 16 | 3/4/2019 | Ogier | N | Y | P | | |
| 19-53550-pmb | 9/13/2019 | 51 | 3/4/2019 | Steil | N | Y | D | | |
| 19-53531-lrc | 4/2/2019 | 38 | 3/4/2019 | Steil | Y | N | N/A | | |
| 19-20441-jrs | 9/12/2019 | 30 | 3/5/2019 | Nasuti | N | Y | D | | |
| 19-53642-pwb | 3/7/2019 | 7 | 3/5/2019 | Gordon | Y | Y | R | | |
| 19-54029-bem | 3/26/2019 | 19 | 3/12/2019 | Layng | N | Y | D | | |

| Case No. | Date of Request to Convert | Doc # | Petition Date | Ch 7 Trustee | Trustee object? | Converted? | Outcome in Chapter 13 case | Fees | |
|---|---|---|---|---|---|---|---|---|---|
| 19-54048-pmb | 8/13/2019 | 55 | 3/13/2019 | Bargar | Y | W | N/A | | |
| 19-54385-jwc | 3/20/2019 | 8 | 3/19/2019 | Trauner | N | Y | P | | |
| 19-54725-sms | 6/29/2019 | 31 | 3/26/2019 | Ogier | N | Y | R | | |
| 19-54878-pmb | 4/22/2019 | 12 | 3/28/2019 | Layng | N | Y | R | | |
| 19-40740-bem | 5/17/2019 | 9 | 3/29/2019 | Richardson | N | Y | P | | |
| 19-54968-pwb | 8/5/2019 | 31 | 3/29/2019 | Miller | N | D WOP | N/A | | |
| 19-40836-pwb | 8/1/2019 | 21 | 4/10/2019 | Richardson | Y | Y | P | 2,709.00 | 2,173.50 |
| 19-56108-pmb | 6/19/2019 | 27 | 4/19/2019 | Lubin | N | Y | P | | |
| 19-20823-jrs | 9/3/2019 | 23 | 4/29/2019 | Nappier | N | Y | P | | |
| 19-56582-bem | 6/3/2019 | 20 | 4/29/2019 | Goodman | N | Y | D | | |
| 19-56663-jwc | 5/2/2019 | 7 | 4/30/2019 | Bargar | N | D Fee | N/A | | |
| 19-57057-lrc | 6/18/2019 | 12 | 5/6/2019 | Hays | N | Y | R | | |
| 19-57404-pmb | 11/29/2019 | 59 | 5/9/2019 | Steil | N | Y | D | | |
| 19-20985-jrs | 10/9/2019 | 27 | 5/17/2019 | Patten | N | Y | P | | |
| 19-57734-bem | 7/10/2019 | 25 | 5/17/2019 | Hays | N | Y | R (twice) | | |
| 19-57826-lrc | 7/8/2019 | 32 | 5/20/2019 | Layng | N | Y | D | | |
| 19-41192-pwb | 1/14/2020 | 54 | 5/21/2019 | Montz | N | Y | P | 2,940.00 | 2,940.00 |
| 19-58248-wlh | 2/5/2020 | 53 | 5/29/2019 | Bargar | N | W | N/A | | |
| 19-58351-bem | 9/3/2019 | 19 | 5/31/2019 | Palmer | N | Y | D | | |
| 19-58445-sms | 7/10/2019 | 19 | 5/31/2019 | Gordon | N | W | N/A | | |
| 19-21103-jrs | 7/12/2019 | 8 | 6/3/2019 | Nasuti | N | Y | P | | |
| 19-41303-pwb | 10/4/2019 | 22 | 6/3/2019 | Richardson | N | Y | P | 3,811.50 | 3,811.50 |
| 19-21121-jrs | 7/23/2020 | 31 | 6/4/2019 | Nasuti | N | Y | P | | |
| 19-58818-sms | 6/14/2019 | 14 | 6/5/2019 | Hays | N | D WOP | N/A | | |
| 19-58826-pwb | 10/4/2019 | 26 | 6/5/2019 | Hays | N | Y | P | | |
| 19-58919-bem | 6/29/2019 | 14 | 6/7/2019 | Layng | N | Y | D | | |
| 19-58930-lrc | 9/10/2019 | 23 | 6/7/2019 | Layng | N | Y | D | | |
| 19-59200-wlh | 10/24/2019 | 49 | 6/12/2019 | Trauner | N | W | N/A | | |
| 19-60265-jwc | 1/9/2020 | 31 | 7/1/2019 | Pettie | N | Y | P | | |
| 19-60529-jwc | 11/14/2019 | 31 | 7/5/2019 | Gordon | Y | W | N/A | | |
| 19-21336-jrs | 10/9/2019 | 14 | 7/10/2019 | Nasuti | N | Y | D | | |
| 19-60758-pmb | 8/25/2019 | 12 | 7/10/2019 | Trauner | N | Y | D | | |
| 19-61087-wlh | 9/27/2019 | 22 | 7/17/2019 | Goodman | N | Y | D | | |
| 19-61197-lrc | 2/16/2020 | 30 | 7/19/2019 | Cooper | Y | Y | P | 3,500.00 | 3,500.00 |
| 19-11444-whd | 9/3/2019 | 8 | 7/29/2019 | Mann | N | Y | P | | |
| 19-61975-sms | 11/8/2019 | 45 | 8/2/2019 | Bargar | N | Y | D | | |
| 19-62385-lrc | 11/13/2019 | 24 | 8/6/2019 | Ogier | N | Y | P | | |
| 19-62562-bem | 11/27/2019 | 19 | 8/9/2019 | Gordon | N | Y | P | | |
| 19-62749-lrc | 10/17/2019 | 15 | 8/13/2019 | Goodman | N | Y | P | | |
| 19-62826-pmb | 11/1/2019 | 24 | 8/14/2019 | Lubin | N | Y | D | | |

| Case No. | Date of Request to Convert | Doc # | Petition Date | Ch 7 Trustee | Trustee object? | Converted? | Outcome in Chapter 13 case | Fees | |
|---|---|---|---|---|---|---|---|---|---|
| 19-63149-bem | 11/19/2019 | 22 | 8/21/2019 | Bargar | N | Y | P | | |
| 19-21690-jrs | 3/30/2020 | 24 | 8/22/2019 | Nappier | N | Y | P | | |
| 19-63243-jwc | 9/17/2019 | 20 | 8/22/2019 | Trauner | N | Y | P | | |
| 19-11662-whd | 11/15/2019 | 20 | 8/27/2019 | Howell | N | Y | D | | |
| 19-63583-lrc | 10/23/2019 | 23 | 8/29/2019 | Goodman | N | Y | D | | |
| 19-63666-pmb | 10/22/2019 | 15 | 8/30/2019 | Palmer | N | D  WOP | N/A | | |
| 19-64094-jwc | 3/17/2020 | 29 | 9/5/2019 | Palmer | N | Y | P | | |
| 19-64175-jwc | 10/21/2019 | 25 | 9/6/2019 | Gordon | N | Y | P | | |
| 19-11776-whd | 10/31/2019 | 31 | 9/9/2019 | Howell | N | Y | D | | |
| 19-64335-jwc | 3/25/2020 | 21 | 9/10/2019 | Scarver | N | Y | P | | |
| 19-64624-pwb | 10/17/2019 | 12 | 9/13/2019 | Miller | N | Y | D | | |
| 19-11895-whd | 2/14/2020 | 16 | 9/25/2019 | Mann | N | Y | P | | |
| 19-65580-bem | 1/6/2020 | 25 | 9/30/2019 | Bargar | N | Y | R | | |
| 19-65912-pmb | 12/4/2019 | 21 | 10/4/2019 | Gordon | N | W | N/A | | |
| 19-42441-pwb | 2/13/2020 | 19 | 10/21/2019 | Richardson | Y | Y | P | 1,921.50 | 1,921.50 |
| 19-66946-sms | 12/4/2019 | 23 | 10/23/2019 | Gordon | Y | W | N/A | | |
| 19-42468-pwb | 12/11/2019 | 11 | 10/24/2019 | Richardson | N | Y | P | | |
| 19-67128-pwb | 1/22/2020 | 30 | 10/28/2019 | Gordon | Y | Y | P | 15,000.00 | Pending |
| 19-22172-jrs | 1/31/2020 | 17 | 10/31/2019 | Patten | N | Y | P | | |
| 19-67346-jwc | 1/28/2020 | 10 | 10/31/2019 | Hays | N | Y | P | | |
| 19-67555-sms | 1/17/2020 | 21 | 11/2/2019 | Pettie | N | Y | P | | |
| 19-22214-jrs | 12/13/2019 | 25 | 11/5/2019 | Patten | N | Y | P | | |
| 19-12240-whd | 1/30/2020 | 15 | 11/7/2019 | Baker | N | Y | D | | |
| 19-12255-whd | 4/24/2020 | 29 | 11/8/2019 | Baker | N | Y | P | | |
| 19-42682-bem | 4/16/2020 | 28 | 11/15/2019 | Richardson | N | Y | P | | |
| 19-12291-whd | 1/14/2020 | 12 | 11/15/2019 | Baker | N | Y | P | | |
| 19-12358-whd | 8/4/2020 | 57 | 11/24/2019 | Mann | N | Y | P | | |
| 19-22316-jrs | 2/14/2020 | 25 | 11/25/2019 | Nappier | N | Y | P | | |
| 19-68886-sms | 1/23/2020 | 12 | 11/25/2019 | Palmer | N | Y | D | | |
| 19-22333-jrs | 7/22/2020 | 48 | 11/26/2019 | Nappier | N | W | N/A | | |
| 20-21059-jrs | 8/7/2020 | 40 | 11/26/2019 | Nappier | N | Y | Y | | |
| 19-22342-jrs | 5/12/2020 | 28 | 11/27/2019 | Nappier | N | Y | P | | |
| 19-69106-lrc | 1/17/2020 | 22 | 11/29/2019 | Gordon | Y | W | N/A | | |
| 19-69679-wlh | 6/27/2020 | 49 | 12/8/2019 | Bargar | Y | Y | P | | |
| 19-70063-pwb | 1/6/2020 | 18 | 12/16/2019 | Ogier | N | Y | P | | |
| 19-70076-pwb | 12/27/2019 | 13 | 12/16/2019 | Ogier | N | D Fee | N/A | | |
| 19-70188-pmb | 1/24/2020 | 19 | 12/17/2019 | Scarver | N | Y | P | | |
| 19-70703-sms | 2/4/2020 | 26 | 12/31/2019 | Gordon | N | Y | P | | |
| 20-60682-pwb | 7/8/2020 | 25 | 1/10/2020 | Hays | N | Y | P | | |
| 20-20081-jrs | 6/8/2020 | 37 | 1/14/2020 | Nappier | N | Y | P | | |

| Case No. | Date of Request to Convert | Doc # | Petition Date | Ch 7 Trustee | Trustee object? | Converted? | Outcome in Chapter 13 case | Fees | |
|---|---|---|---|---|---|---|---|---|---|
| 20-60996-pwb | 3/17/2020 | 13 | 1/17/2020 | Steil | N | Y | P | | |
| 20-20112-jrs | 5/20/2020 | 23 | 1/21/2020 | Nappier | N | Y | P | | |
| 20-20116-jrs | 3/31/2020 | 17 | 1/22/2020 | Patten | N | Y | P | | |
| 20-10169-whd | 4/21/2020 | 13 | 1/24/2020 | Baker | N | Y | P | | |
| 20-61321-pwb | 2/26/2020 | 10 | 1/24/2020 | Hays | N | Y | P | | |
| 20-61642-pwb | 4/8/2020 | 24 | 1/29/2020 | Scarver | N | Y | P | | |
| 20-61755-sms | 4/9/2020 | 24 | 1/30/2020 | Miller | N | Y | P | | |
| 20-61696-jrs | 4/20/2020 | 24 | 1/30/2020 | Miller | Y | Y | P | 4,756.00 | 4,756.00 |
| 20-40388-pwb | 3/28/2020 | 18 | 2/18/2020 | Richardson | N | Y | P | | |
| 20-40416-pwb | 5/28/2020 | 27 | 2/20/2020 | Richardson | Y | Y | P | 2,205.00 | 2,205.00 |
| 20-63159-jwc | 4/6/2020 | 19 | 2/21/2020 | Bargar | N | Y | P | | |
| 20-10397-whd | 7/18/2020 | 26 | 2/24/2020 | Howell, III | N | Y | P | | |
| 20-40455-bem | 6/16/2020 | 16 | 2/25/2020 | Montz | N | Y | P | | |
| 20-63555-wlh | 3/5/2020 | 13 | 2/28/2020 | Steil | Y | N | N/A | | |
| 20-64510-jrs | 3/16/2020 | 8 | 3/13/2020 | Pettie | N | Y | R | | |
| 20-20513-jrs | 6/12/2020 | 16 | 3/16/2020 | Nappier | N | Y | P | | |
| 20-65495-sms | 5/12/2020 | 14 | 4/10/2020 | Lubin | N | Y | P | | |
| 20-10708-whd | 4/16/2020 | 8 | 4/15/2020 | Mann | N | W | N/A | | |
| 20-66640-lrc | 8/3/2020 | 19 | 5/24/2020 | Pettie | N | W | N/A | | |
| 20-67132-lrc | 7/30/2020 | 20 | 6/11/2020 | Gordon | Y | W | N/A | | |
| 20-67179-sms | 7/29/2020 | 23 | 6/12/2020 | Lubin | N | Y | P | | |
| 20-67291-wlh | 6/17/2020 | 8 | 6/16/2020 | Scarver | N | Y | P | | |

## APPENDIX F

### Objections to Conversion By Trustee

| Trustee | No Objection | Objection | Outcome of Objection N=Not converted; P=Pending; W=Withdrawn; Y=Converted | Total |
|---|---|---|---|---|
| Baker | 6 | 0 | | 6 |
| Bargar | 6 | 4 | N-1  W-1   Y-2 | 10 |
| Cooper | 2 | 1 | Y-1 | 3 |
| Goodman | 7 | 0 | | 7 |
| Gordon | 6 | 10 | W-6  Y-4 | 16 |
| Hays | 10 | 0 | | 10 |
| Howell | 3 | 0 | | 3 |
| Layng | 7 | 0 | | 7 |
| Lewis | 1 | 0 | | 1 |
| Lubin | 4 | 1 | W-1 | 5 |
| Mann | 6 | 0 | | 6 |
| Miller | 4 | 2 | Y-2 | 6 |
| Montz | 4 | 0 | | 4 |
| Nappier | 12 | 0 | | 12 |
| Nasuti | 4 | 0 | | 4 |
| Ogier | 8 | 0 | | 8 |
| Palmer | 5 | 0 | | 5 |
| Patten | 5 | 1 | N-1 | 6 |
| Pettie | 6 | 0 | | 6 |
| Richardson | 9 | 4 | Y-4 | 13 |
| Scarver | 6 | 0 | | 6 |
| Steil | 3 | 3 | N-2   Y-1 | 6 |
| Trauner | 5 | 0 | | 5 |
| Totals | 129 | 26 | N-4  W-8  Y-14 Total: 26 | 155 |

### Outcome of Requests to Convert to Chapter 13

| Converted to Chapter 13 | Conversion Denied (Summaries on next page) | Conversion Request Withdrawn | Chapter 7 case or conversion motion dismissed | | | Total |
|---|---|---|---|---|---|---|
| | | | Filing fees | Want of prosecution | §707(a) | |
| 126 | 5* | 17** | 3 | 3 | 1 | 155 |

 *  Includes one cases in which trustee did not object.
 ** Includes eight cases in which trustee did not object.  Withdrawal includes dismissal for want of prosecution of the conversion motion in one case and dismissal of the case prior to a ruling on conversion in two cases.

Appendix F attached to the Court's August 28, 2020 Order [68] reflected 156 cases that included a duplicate entry for Case No. 19-20386-jrs.  This list revises the results based on removal of the duplicate case.   The information has been revised to reflect dispositions of pending conversion requests, to correct errors, and to provide additional information from the records based on further review of them.

71

## Summaries of Cases Not Converted

*In re Benjamin Hardee,* No. 18-67130-BEM

The trustee recovered $ 75,000 from the *pro se* debtor's bank account as of the petition date and from later deposits into it.  The United States Trustee filed a complaint objecting to the debtor's discharge.  The court denied the motion to convert to chapter 13 filed over nine months after the filing date.

*In re Cynthia Lee Stowers,* No. 18-20701-JRS

The debtor's chapter 7 schedules showed ownership of real estate with equity.  In fact, two weeks prior to the filing of the case, she had quitclaimed it to her former husband in connection with a divorce settlement agreement which provided for her to receive $ 52,800 as an equitable division of property, payable at $ 1,100 per month.  The court denied her motion to convert to chapter 13 to file a plan that would permit her to use a portion of the monthly payments for living expenses.

*In re Cassandra Johnson Landry,* Case No. 18-55697-LRC

The *pro se* debtor originally filed a chapter 13 case.  The chapter 13 trustee and numerous creditors objected to confirmation, and she converted her case to chapter 7.  Later, she moved to reconvert to chapter 13.  The chapter 13 trustee's opposition to reconversion alleged that, among other things, the debtor had filed an unintelligible plan in the initial chapter 13 case and had testified that she planned to dispute every debt.  [Doc. 162].  The court denied the motion based on lack of good faith and on a "clear record of delay or disruptive behavior." [Doc. No. 178].

*In re Michael Price,* 19-43531-LRC

Trustee objected to conversion of case of *pro se* debtor whose chapter 7 schedules showed no income.  The court denied conversion, the chapter 7 trustee reported that the case had no assets for administration, and the court permitted the debtor to voluntarily dismiss the case.  The United States Trustee requested that the case remain open for investigation of "conduct and fees of one or more persons who provided bankruptcy assistance to the debtor." [Doc. 69].

*In re Barbie L. Colbert,* 20-63555-WLH

The *pro se* debtor filed a chapter 7 case in which she sought a waiver of the filing fee based on monthly income of $ 112.  A week later, she filed a motion to convert in which she stated that she was "seeking employment that will allow me to assist in paying my creditors a reasonable monthly fee."  The debtor did not appear at the hearing on the trustee's objection and the court denied conversion.

Distribution List

James Edward McConnell
1369 High Point Ave SW
Atlanta, GA 30315

Karen King
King & King Law LLC
215 Pryor Street, S.W.
Atlanta, GA 30303

Neil C. Gordon
Arnall, Golden & Gregory, LLP
Suite 2100
171 17th Street, NW
Atlanta, GA 30363

Mary Ida Townson
Chapter 13 Trustee
Suite 1600
285 Peachtree Center Ave, NE
Atlanta, GA 30303

U.S. Trustee
Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303